**UNITED STATES of America,**
**Plaintiff-Appellee,**

v.

**Giulio BRUNI, Defendant-Appellant.**

**No. 15176.**

United States Court of Appeals
Seventh Circuit.

March 18, 1966.

Rehearing Denied April 27, 1966.

Joseph I. Bulger, Chicago, Ill., for appellant.

William J. Mulligan, Thomas R. Jones, Asst. U. S. Attys., James B. Brennan, U. S. Atty., William M. Coffey, Asst. U. S. Atty., Milwaukee, Wis., for appellee.

Before HASTINGS, Chief Judge, and KNOCH and KILEY, Circuit Judges.

KNOCH, Circuit Judge.

The indictment in this case originally consisted of six counts. The first count dealt with conspiracy. It was dismissed prior to trial. Defendant-appellant, Giulio Bruni, was charged in Counts 2 and 3 with passing and uttering falsely made and counterfeit $20 Federal Reserve Bank Notes at Lowell and Astico in Dodge County, Wisconsin, on September 13, 1964.

Counts 4, 5 and 6 dealt with charges against a co-defendant, John G. Johnson, who after being granted a separate trial, pleaded guilty and testified for the government at Dr. Bruni's trial.

The jury found Dr. Bruni guilty. His motion for a new trial was denied. He was sentenced to serve five years and to pay a fine of $5,000 on each count, the sentences to run concurrently, making a total sentence of five years and a total fine of $10,000. This appeal followed.

Defendant asserts that the government failed to prove him guilty beyond a reasonable doubt, particularly with regard to the element of intent and guilty knowledge; that the Trial Judge committed prejudicial errors in admission and exclusion of certain evidence, in denying his motion for acquittal at the close of all the evidence, and in making prejudicial remarks within the hearing of the jury. He contends that his conviction was based on false identifications by alleged victim-witnesses, and false and perjured testimony by his alleged accomplice, John Johnson, and, further, that the two counterfeit notes which allegedly fell out of a cabinet drawer in his residence were placed there either by the finders, two special agents of the Secret Service, or by John Johnson, who had access to the premises.

Defendant attacks the credibility of the witnesses for the government charging some of them with honest mistakes and others, particularly John Johnson, with deliberate perjury. The jury as trier of the facts determined the issues respecting credibility. Glasser v. United States, 315 U.S. 60, 80, 62 S.Ct. 457, 86 L.Ed. 680 (1942). Their verdict must be sustained if supported by substantial evidence including reasonable inferences therefrom as viewed in the light most favorable to the government. United States v. Mims, 7 Cir., 1965, 340 F.2d 851, 852, cert. den. 381 U.S. 913, 85 S.Ct. 1535, 14 L.Ed.2d 434; United

804

States v. Armstrong, 7 Cir., 1964, 337 F.2d 1015, 1016, and cases there cited, cert. den. 381 U.S. 905, 85 S.Ct. 1452, 14 L.Ed.2d 287.

At the trial, John Gerdt Johnson testified that he was employed by defendant, Dr. Bruni, and another person, at Northlake Hospital from March to September 1964, as janitor, later working in housekeeping and maintenance. He said that he had formerly been a police officer. At the outset, he admitted conviction of a felony in this case. He said he knew Dr. Bruni for about eight years. He related a detailed conversation with Dr. Bruni about acquiring and passing counterfeit money, and described Dr. Bruni's purchase of more than $5000 in counterfeit $20 bills, all with the same serial numbers and in various stages of completion, some untrimmed and some not fully printed. He stated that the money obtained from passing these was to be used to buy more counterfeit, samples of which Dr. Bruni showed him.

On September 12, 1964, Johnson said he and defendant, Dr. Bruni, drove from Northlake, Illinois, to Wisconsin Dells, Wisconsin, arriving early September 13, 1964, where they passed a number of counterfeit bills, which were provided by the defendant. He said that coming back from Wisconsin Dells that same day, they made numerous stops in towns along the way where they made various small purchases with counterfeit $20 bills.

Harold William Ring testified that he was tending bar in the Blackhawk Tap, Columbus, Wisconsin, on September 13, 1964, and that he sold Dr. Bruni, a bottle of beer for a $20 bill, giving him $19 and some change in return; that this was the only $20 bill he took in and that there were no $20 bills in the cash register at the start of business. Harold William Ring, Jr., testified that he relieved his father at the bar about 7:00 P.M. and worked until closing time, that he accepted no $20 bills, and that there was only one $20 bill in the day's receipts.

Herbert Edward Monthie testified that between 8:00 and 8:30 P.M. on September 13, 1964, while he was working as part-time bartender in the Shamrock Tavern in Astico, Wisconsin, he sold two cans of beer to the defendant who paid with a new $20 bill and received $19.30 in change. He testified that he had previously received another $20 bill, old and dilapidated, from a local customer known to him, and that these were the only $20 bills he took in that day. He saw defendant leave the premises with the two cans of beer, get into an automobile and go east on Route 16.

Emma Frank testified that she owned the Shamrock Tavern, that she worked on September 13, 1964, during the periods before and after Mr. Monthie was on duty, that she accepted no $20 bills, and that there were none on hand at the start of business that day.

Maurice Clifford Kuenzi testified that on September 13, 1964, at about 8:30 P.M. he and his wife were sitting in their automobile outside of his tavern, the E. & M. Bar in Lowell, Wisconsin. He saw an automobile containing two men come up the east side of the street heading north and stop. Two men got out. One went toward a restaurant across the street. Mr. Kuenzi followed the other man, who had been sitting on the driver's side, and whom he identified as the defendant into his Tavern, where defendant tried to buy two cans of beer with a $20 bill which Mr. Kuenzi refused to accept. Defendant said he had no change and left. Mr. Kuenzi followed the defendant and saw him enter and then leave Tuffie's Bar about 150 feet north on the same side of the street, and then return to the automobile.

Mrs. Harold Rahn testified that she and her husband operated Tuffie's Bar, about half a block from the Kuenzi Tavern in Lowell, Wisconsin, that she was tending bar there about 8:30 P.M. on September 13, 1964; that there were no $20 bills in the cash register; and that she sold defendant two cans of beer for 55 cents, giving him change for a $20 bill which was the only $20 bill taken in that day. Mr. Rahn was present at the time. At the trial, he also identified defendant

as the purchaser who paid for two cans of beer with a $20 bill.

Roger Kreitzman testified that he was part-time Chief of Police at Lowell; that after a conversation with Mr. Kuenzi, he stopped a late model Chrysler Imperial on the outskirts of Lowell. He said that the automobile bore an Illinois license plate beginning "LB"; that the defendant was driving; that there was another man in the car; and that the defendant showed a driver's license and identification as an Illinois physician which indicated a first initial "G". He allowed the car to go on.

Typical of defendant's attack on the credibility of the evidence is his comment that allegedly knowing of Mr. Kuenzi's suspicions and armed with a description of the two men seen in the town, Chief Kreitzman nevertheless made no effort to detain defendant and his companion for investigation, merely telling them that he was looking for a stolen automobile with an Illinois license plate, and allowing them to depart when the driver identified himself as a physician. From these circumstances, defendant concludes that neither Mr. Kuenzi nor Chief Kreitzman really suspected Dr. Bruni of passing counterfeit money at the time. Chief Kreitzman was examined on the information available to him at the time and his intentions with respect to the two strangers seen in the town. Evidently his explanation was satisfactory to the jury who were the triers of the facts.

Jerrold Nordin Fehrman testified that he was employed as part-time helper in Miller's Standard Service Station at Oconomowoc, Wisconsin. He said that about 9:00 P.M. a late model Chrysler, with two male occupants drove up. He identified defendant as the driver. He said that the passenger asked for $2 worth of gas, for which he offered a $20 bill, series G. Mr. Fehrman said he wanted to check a list of known counterfeit bills, but when the passenger told him those listed bills were a "B" series, he gave him $17 in bills and was making change for the rest, while the passenger made a telephone call. He consulted another gas station attendant who also said that the

known counterfeit bills were a B series. Meanwhile Mr. Fehrman found the list. Both Dr. Bruni and his passenger companion came in and checked the $20 bills they were carrying against this list. The companion then asked to see the bill he had previously given Mr. Fehrman, took it back and substituted another $20 bill for it. Mr. Fehrman said he knew it was another bill because of the difference in crispness. He also wrote down the automobile license number which he turned in to a police officer who came over to see him after he had called the police department across the street. This was later proved to be the same number as the license issued to defendant.

John Johnson testified that after he had given the gas station attendant a $20 bill which Dr. Bruni had provided, he telephoned his home; that while he was still in the telephone booth, Dr. Bruni came to tell him that the gas station attendant had written down the license number and that Johnson should recover the $20 bill, which Johnson did by switching it with one of five good $20 bills he had received from Dr. Bruni the day before. He testified further that several days later Dr. Bruni gave him some counterfeit money to burn because one of the makers of the counterfeit had been caught passing a $20 bill. When arrested September 23, 1964, he still had some counterfeit $20 bills on his person and some in a dresser at his home, which were recovered by the Secret Service agents who were armed with a search warrant.

Special Secret Service Agent Nema Ciochina testified that he participated with three other special agents in the arrest of Dr. Bruni at his home on September 24, 1964, and in the subsequent search of the premises, where he found two untrimmed counterfeit bills in a cabinet. Special Agent Richard Sheridan testified that he was present when Agent Ciochina found the two bills.

Richard A. Jordan, assistant to the Special Agent in Charge of the U. S. Secret Service Office in Chicago, testified that on September 24, 1964, and again on February 8, 1965, Dr. Bruni denied

having been in Wisconsin during the past two or three years.

Special Agent John A. Sokoll, whose duties include investigation of counterfeits, and who has received special training in detection of counterfeit money, testified that the $20 bills tendered by defendant in the Blackhawk Tap, the Shamrock Tavern, and Tuffie's Bar, and the bills recovered in John Johnson's and Dr. Bruni's homes, were all counterfeit and produced from the same plates.

■ Defendant argues that all these witnesses who saw the passers of the counterfeit money only fleetingly identified defendant not from an independent recollection but from suggestion planted by overzealous Secret Service Agents who showed the witnesses pictures of Dr. Bruni and who pointed him out to the various witnesses before and during the trial. Some of the witnesses testified that they recognized Dr. Bruni when they saw him; that he had not first been pointed out to them. Several witnesses said they had been shown a number of pictures from which they had picked out Dr. Bruni's. They denied seeing any markings which led them to make their selection. To rebut the suggestion on cross-examination that there was something improper about the display of the pictures, the government called the investigating agent concerned who testified over defendant's objection as to the manner in which the photographs were used. The actual pictures were admitted in evidence. The jurors were allowed to examine them and to take them into the jury room. We find no abuse of discretion in this regard. There was ample evidence that the witnesses were shown a spread of photographs which included those of Dr. Bruni and John Johnson. The credibility of the identifications presented an issue for determination by the jury.

■ We are satisfied that the evidence supports the verdict of the jury returned on February 18, 1965.

■■ Defendant's motion for a new trial was not filed until March 24, 1965. Rule 33, Federal Rules of Criminal Procedure, allows five days to file a motion for new trial on grounds other than newly discovered evidence. Defendant's motion was based on the alleged insufficiency of the evidence. Motions for new trial are addressed to the sound discretion of the Trial Judge. Dranow v. United States, 8 Cir., 1962, 307 F.2d 545, 567, and cases there cited. The motion was untimely filed, but, in any event, we find no abuse of discretion in the denial of new trial by the District Court.

■ Defendant asserts that it was prejudicial error to admit into evidence the government's Exhibits 21 through 26. These comprised the two untrimmed counterfeit $20 bills found in defendant's home, the $20 counterfeit bill received by Mr. Ring in the Blackhawk Tap, and the three counterfeit $20 bills found in the Johnson home. Defendant argues that there was no evidence connecting him with these bills. Two of these bills were found in his home. He was identified as passing one of them. John Johnson testified that he received the other three which were found in his home from Dr. Bruni. A connection between the bills and Dr. Bruni was established by the evidence. The Trial Judge made it clear to the jury in comments and instructions during the testimony and afterward that the defendant was on trial only for passing two counterfeit bills and that evidence of other similar offenses or conduct was admitted only to show knowledge or intent, matters which were and are still contested by the defendant as not proved. We find no error in admission of these exhibits nor in the Court's reminding the jury of the limited purpose for which the evidence was admitted. United States v. Iacullo, 7 Cir., 1955, 226 F.2d 788, 793, cert. den. 350 U.S. 966, 76 S.Ct. 435, 100 L.Ed. 839; United States v. Abraham, 7 Cir., 1965, 347 F.2d 395, 397.

We have considered all other points raised by the defendant and have consulted all authorities to which our attention has been drawn. We are convinced that the judgment entered in the District Court must be affirmed.

Affirmed.