**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**George Serian GEBHART, David Flem-
ing Whitfield, Harold Cordell Smith,
Defendants-Appellants.**

Nos. 20425–20427.

United States Court of Appeals,
Sixth Circuit.

May 7, 1971.

———◆———

Peter F. Beasley, Covington, Ky. (James L. Cobb, Jr., Covington, Ky., and Morris Weintraub, Newport, Ky., on the brief), for appellants.

Maurice K. Merten, Dept. of Justice, San Francisco, Cal. (Eugene E. Siler, Jr., U. S. Atty., Lexington, Ky., Mark W. Perrin, Robert Gary, Attys., Dept. of Justice, Washington, D. C., on the brief), for appellee.

Before CELEBREZZE and MILLER, Circuit Judges, and O'SULLIVAN, Senior Circuit Judge.

CELEBREZZE, Circuit Judge.

This is an appeal from the United States District Court for the Eastern District of Kentucky. Appellants were indicted on four counts of using and one count of conspiring to use the facilities of interstate commerce to promote gambling in violation of 18 U.S.C. §§ 1952(a) (3) and (b) (1954).[1] Appellants were convicted on each of the counts for which indicted and sentenced to concurrent sentences of one year and a day.

At trial, there was substantially unrebutted testimony that the Appellants managed, carried on and promoted the game of bingo at the Latin Quarter, Wilder, Kentucky, on a continuous basis since 1964. Further, in the operation of

---

1. Title 18, Sections 1952(b) and (c) were amended in 1970 by Public Law 91–513, Title II § 701(i) (2). Those amendments are not relevant to the questions raised in this case and, in any event, did not take effect until more than two years after the commencement of the instant prosecutions. Public Law 91–513, § 702, October 27, 1970.

the bingo game, the Appellants utilized several thousand bingo cards and assorted bingo paraphernalia and equipment which had stamped upon it the trademark of Bingo King Company, Englewood, Colorado. The President and another employee of Bingo King Company testified that the Company's records showed that over a period of several years they had received in Englewood, Colorado, by telephone and by mail, orders for a variety of bingo equipment and materials from a person who represented himself to be one of the Appellants. There was direct testimony such orders were filled through the United States mails; and in the evidence seized at the time of the raid on the Latin Quarter, large amounts of materials and equipment bearing the Bingo King trademark and patents were found.

Several issues are raised on appeal. Before discussing these issues, we first consider the elements which the Government is required to prove to establish a violation of Title 18, Section 1952(a)(3). Title 18, Section 1952 (1964) provided that:

"(a) Whoever * * * uses any facility in interstate commerce or foreign commerce, including the mail, with intent to—

\* \* \* \* \* \*

"(3) otherwise promote, manage, establish, carry on or facilitate the promotion, management, establishment, or carrying on, of any unlawful activity, and thereafter performs or attempts to perform any of the acts specified in subparagraphs (1), (2) and (3), shall be fined not more than

$10,000 or imprisoned for not more than five years, or both.

"(b) As used in this section 'unlawful activity' means (1) any business enterprise involving gambling, liquor on which the Federal excise tax has not been paid, narcotics, or prostitution offenses in violation of the laws of the State in which they are committed or of the United States * * *."

To successfully prosecute one under the above statutory provision, the United States must prove the following elements: (1) that the accused voluntarily traveled in interstate commerce or used the facilities of interstate commerce; (2) that he attempted to or did in fact promote, manage, establish, carry on or facilitate the promotion, management, establishment or carrying on of any one of certain statutorily defined activities; and (3) that the accused formed a specific intent to promote, manage, establish, carry on or facilitate one of the prohibited activities.

We turn now to a consideration of the four issues raised on appeal. First, the Appellants contend that the District Court erred in permitting the United States to introduce evidence that the Appellants may have been "skimming" or embezzling funds from the bingo game which they were reputedly operating for the benefit of a charity known as the Speers Society.

The Government introduced evidence from an officer of the Speers Society that the Appellants were to operate the bingo games in behalf of the Speers Society and certain other charitable causes. Immediately thereafter the Government, over the Appellants' objections,[2] intro-

---

2. "The Court: * * * the United States has a right to show the amount involved here. It is like a bank robbery. You can't just say the bank was robbed. You have a right to show it was robbed of $16,000.

"Mr. Nelson: Your Honor, if they are running a bingo game—

"The Court: It goes to intent. Your statement to the jury was they didn't intend to do anything wrong.

"Mr. Nelson: They didn't intend any interstate activity.

"The Court: Well, of course, you have got evidence here to the effect that there was interstate transactions.

"Mr. Nelson: Not by these defendants.

"The Court: No, but by the Latin Quarter and proof that these defendants were in charge of the Latin Quarter. That is the position of the United States on it.

duced testimony and evidence, in the form of accounting records compiled by the F.B.I., which showed an apparent discrepancy between the net profits the Appellants reported to the Speers Society and the net profits the witness believed the bingo operation actually generated. From this evidence, the jury may have reasonably inferred that the Appellants had retained for their own use income from the bingo operation which was to have gone to the Speers Society.

This testimony was relevant as cumulative evidence for the proposition that Appellants jointly operated a large bingo operation, and also as telling evidence that Appellants had actual control over the gambling operation and that they exercised their control over the gambling revenues with the requisite statutory specific intent to "promote, manage, establish, carry on or facilitate" a gambling operation. No other evidence introduced by the Government so plainly indicated the autonomy of control of the Appellants over the bingo games and the concomitant specific intent of the Appellants to establish a bingo operation as did the accounting evidence to which Appellants object.

■ Although we find the accounting evidence highly relevant to the instant indictments, it did also raise an inference that the Appellants were engaged in criminal conduct contemporaneous to and as an integral part of their bingo operation. As a general rule, evidence of marginally relevant prior or contemporaneous criminal conduct of an accused is not admissible in a trial of the accused because of its tendency to prejudice and inflame the jury and possibly deprive an accused of a fair trial on the

substantive crime for which he is charged. See generally, Wignore On Evidence (3d ed.) §§ 194, 300–304, 305, 306(3). But here we are dealing with clearly relevant and important evidence on the issues of the degree of control, the scope of the operation and the existence of a specific intent to manage a gambling enterprise. The "accounting" testimony as it related to other criminal conduct was "part of" the gambling operation "and so closely related to the" elements of the indictment "that it could not be separated into two parts." United States v. Compton, 365 F.2d 1, 4 (6th Cir. 1966). Under such circumstances, we find the District Court did not abuse its discretion in permitting the Government to introduce its full accounting testimony.

■ Second, the Appellants contend the District Court erred in failing to charge the jury properly with regard to the limited uses they could make of the evidentiary inferences of "skimming" by the Appellants. See United States v. Bruni, 359 F.2d 802, 806 (7th Cir. 1966).

The District Court carefully instructed the jury that under the laws of the State of Kentucky bingo is an illegal lottery and it does not matter

"one bit and it is not for you [the jury] to decide whether this was a good lottery or a bad lottery or whether it was a good bingo game or a bad bingo game, whether its object was worthy or unworthy, whether it was for selfish purposes ["skimming"] or for purely beneficent purposes [Speers Society and other charitable causes]."

The above instruction contemplated the possibility that the jury may have

"Mr. Nelson: Oh, no.
"The Court: I'm not saying that they have or have not proved it, but that is their theory.
"I overrule your objection. I think they have a right to show this.
"Mr. Perrin: Your Honor, for the record, I would like to say that in addition to what Your Honor has stated,

that we have to show it was a business activity. Now, these records run to the day before the raid. Our contention is that they show the bookkeeping on it at the establishment and that it was bookkeeping.
"The Court: I think you have a right to show that."

been improperly influenced by the Government's accounting evidence which suggested the existence of "skimming" by the Appellants. The Court's failure to elaborate more fully on the evidence of embezzlement may have reflected its desire not to dwell unduly on the possibility of contemporaneous criminal conduct. We find the District Court's charge to the jury properly instructed them—albeit in general terms—with regard to their use of the evidence relating to "skimming."

Third, the Appellants contend the District Court erred in excluding certain evidence and admonishing the jury that even if the Appellants believed bingo operations were lawful in Kentucky that such a good faith belief was no defense to the charges for which they were indicted.

 In order to assert a defense of mistake of law based upon a good faith reliance on the representations of public officials, the Appellants must demonstrate that they received communications from public officials in a situation in which reliance would have been justified. While the record may contain an avowal that the Sheriff of Compbell County, Mr. Ratterman, informed the Speers Society that bingo for charitable purposes was lawful in Kentucky, it does not contain any direct proof that any official of the Speers Society relayed the Sheriff's alleged assurances to any of the Appellants. Further, there is no evidence in the record that if the Appellants knew of the Sheriff's alleged assurances, that they possessed such knowledge before they began to manage their bingo operation in the Latin Quarter. In that there is no evidence either by offer of proof or by testimony at trial that Mr. Ratterman ever assured the Appellants directly or indirectly that charitable bingo was lawful in Kentucky, we find the District Court properly excluded evidence as to his alleged conversations with an officer of the Speers Society. We further find the District Court properly admonished the jury not to consider the defense of good faith reliance on the representations of a public official.

Finally, the Appellants contend that the instant prosecutions were so selective and discriminatory as to be violative of the Appellants' rights to due process of the law under the Fifth Amendment. The parties stipulated that prior to the indictments under 18 U.S.C. § 1952(a) (3) in Eastern Kentucky during 1968, there had been no previous federal indictments charging a violation of 18 U.S.C. § 1952 founded solely upon an illegal state lottery in the form of bingo.

 It is clear that the federal government may act in so discriminatory a fashion in its enforcement of the laws as to constitute a denial of due process under the Fifth Amendment. Bolling v. Sharpe, 347 U.S. 497, 74 S.Ct. 693, 98 L.Ed. 884 (1954), Yick Wo v. Hopkins, 118 U.S. 356, 369, 6 S.Ct. 1064, 30 L.Ed. 220 (1886), Washington v. United States, 130 U.S.App.D.C. 374, 401 F.2d 915, 922 (1968). But the record in this case is devoid of any evidence that in exercising its broad authority of prosecutorial discretion, the United States' decision to prosecute the Appellants was based upon some invidious or inherently suspect classification such as ones based upon race, religion, wealth or political beliefs. There being no showing that the prosecutor's decision to prosecute was based "upon an unjustifiable standard," Oyler v. Boles, 368 U.S. 448, 82 S. Ct. 501, 7 L.Ed.2d 446 (1962), we find the United States did not violate the Fifth Amendment rights of the Appellants by the exercising of some selectivity in enforcement. Oyler v. Boles, *supra*; Yick Wo v. Hopkins, 118 U.S. 356, 373–374, 68 S.Ct. 1064, 30 L.Ed. 220 (1886); Washington v. United States, 130 U.S.App.D.C. 374, 401 F.2d 915, 924–925 (1968).

We have considered all other issues raised by the Appellants and find them without merit.

Affirmed.