**UNITED STATES of America,
Plaintiff,**

v.

**Angelo RICCIO, David S. Tepps, Michael
D. Donofrio, Marvin Marks and Jo-
seph P. Eterno, Defendants.**

**No. 68 C 450.**

United States District Court
N. D. Illinois, E. D.

April 12, 1968.

Thomas A. Foran, U. S. Atty., J. B. Schmetterer, Asst. U. S. Atty., for plaintiff.

Anna R. Lavin, Edward J. Calihan, Chicago, Ill., for defendants.

## MEMORANDUM OPINION

NAPOLI, District Judge.

This is a civil action brought by the United States against five individual residents of Illinois, in which the government alleges that the defendants were, and on information and belief, still are, engaged in the business of accepting wagers, or receiving wagers for or on behalf of persons engaged in the business of accepting wagers. The government further alleges that each of the defendants has failed to pay the excise tax imposed on wagers under Section 4401 of Title 26, U.S.C.; that each defendant has failed to file monthly returns; that each defendant has failed to pay the special occupation tax imposed by 26 U.S.C. § 4411; that each defendant has failed to register under 26 U.S.C. § 4412; and that defendants have otherwise failed to comply with lawful conditions precedent to the carrying on of their business of accepting wagers, under the terms of 26 U.S.C. § 4901(a). Alleging that it has thus been deprived of substantial taxes to which it is entitled, and that it has no adequate remedy at law, the government asks that the defendants be enjoined from participation in the business of receiving or accepting wagers, until they have complied with the applicable statutory provisions.

Defendants responded with a motion to dismiss in which they asserted their privilege against self-incrimination. Since privilege is an affirmative defense which is not properly presented by a motion attacking the sufficiency of a pleading, the Court has treated the motion as a motion for summary judgment instead, pursuant to Rules 12(b) and 56 of the Federal Rules of Civil Procedure.

In light of the very recent holding of the United States Supreme Court in Marchetti v. United States, (390 U.S. 39, 88 S.Ct. 697, 19 L.Ed.2d 889, 1968); and Grosso v. United States, (390 U.S. 62, 88 S.Ct. 709, 19 L.Ed.2d 906, 1968), that the claim of privilege precludes a criminal conviction premised on failure to pay the tax, the Court has decided to rule on the adequacy of the privilege defense presented by defendant's motion, before any further proceedings are held.

In *Marchetti* and *Grosso*, the Supreme Court, while reversing the criminal conviction for failure to comply with the federal wagering tax laws, found that wagering is an area "permeated with criminal statutes", and that those engaged in wagering are a group "inherently suspect of criminal activities." The Court found that information obtained as a consequence of federal wagering tax laws is readily made available to state and federal officials to enforce various penalties. The court thus found that the obligation to register and pay the occupational tax created real and appreciable hazards of self-incrimination.

While the Supreme Court in *Marchetti* did not hold the wagering tax statutes unconstitutional on their face, they did hold the statutes unenforceable, at least criminally, in the face of a valid claim of the privilege against self-incrimination. The Supreme Court extended an invitation to Congress to cure the defect, by granting an immunity from prosecution arising from any of the information divulged, citing Counselman v. Hitchcock, 142 U.S. 547, 12 S.Ct. 195, 35 L.Ed. 1110. However, no amendments to either the wagering tax laws or to administrative regulations thereunder have been made since *Marchetti*. The government's theory here is that the *Marchetti* privilege may be asserted only in a criminal prosecution for failure to comply with the wagering tax provisions.

■ At this stage of the proceedings, and for purposes of the pending motion only, the well pleaded allegations of the complaint stand admitted. Since this is a civil action commenced by the United States for the enforcement of the internal revenue laws, this Court has jurisdiction of the subject matter under 26 U.S.C. § 7402(a) and 28 U.S.C. § 1345.

The government contends that *Marchetti* and *Grosso* are inapplicable here, first of all, because the Supreme Court specifically refused to rule that the wagering tax statutes as such are constitutionally impermissible; and secondly, because the holding in *Marchetti* and *Grosso* was said to be merely that the government cannot *criminally* punish a violation of the wagering tax laws in the face of a proper claim of privilege. The government thus contends that it may invoke the appropriate civil remedy even after *Marchetti*.

Defendants read *Marchetti* and *Grosso* as holding that the wagering tax statutes are unenforceable in their present state, in the face of a claim of the privilege against self-incrimination. Defendants emphasize those portions of the Supreme Court's opinion where it is suggested that Congress revise the wagering tax scheme, perhaps by adding an immunity provision in order to prevent the successful assertion of the privilege against self-incrimination.

■ Unquestionably, as the Supreme Court recognized in *Marchetti* and *Grosso,* the government may tax activities which are illegal. Furthermore, the government may enact whatever measures are reasonably necessary to aid in the assessment and collection of any tax. In considering the federal wagering tax statutes, the courts have always assumed with a straight face that the principal interest of the United States is the collection of revenue, and not the prosecution of gamblers. United States v. Calamaro, 354 U.S. 351, 77 S.Ct. 1138, 1 L.Ed.2d 1394. However, any government regulation is subject to the rights granted to individuals by the fifth amendment, including the privilege against self-incrim-

ination. It is now clear, after *Marchetti* and *Grosso,* that the reporting requirements of the federal wagering tax statutes, seen in their context of multitudinous criminal statutes, and administrative regulations calling for the release of the information to prosecuting authorities, unduly infringe the right of the individual to be free from compulsory self-incrimination.

Wagering is an area even more permeated with criminal statutes in Illinois, than it is in Connecticut and Pennsylvania, where Marchetti and Grosso were convicted. Illinois Revised Statutes, Chapter 38, article 28, provided comprehensive prohibition of gambling, with criminal penalties. In addition, § 28–4 of Chapter 38 specifically requires the purchaser of a Federal Wagering Occupation Stamp to register in his county of residence, and in each county in which he conducts any business, with criminal penalties for violation. Furthermore, the county clerk is directed to send notice of the registration to various law enforcement officials throughout the state. Ill.Rev.Stat. Ch. 38 § 28–4(c) (1967).

■ It can scarcely be denied, in light of the multitude of state and federal criminal statutes penalizing the very behavior which the defendants would be admitting in registering for, and paying, the wagering tax; and in light of the administrative practice of the internal revenue service, of making registration information available to federal and local law enforcement officials, that the obligation to register and pay the occupational tax presented "real and appreciable" hazards of self-incrimination to defendants here. The defendants' assertion of the privilege is no more "extreme" nor "extravagant" than the assertion of the same privilege in *Marchetti* and *Grosso.*

Accordingly, the privilege asserted by defendants must be an absolute bar to the relief sought by the government here, unless it appears that the privilege has somehow been waived, or that defendants are otherwise outside the protection of the privilege.

■ There is nothing in the record which indicates defendants have waived the privilege. Certainly their failure to report to the internal revenue service at the time the tax was due did not constitute a waiver of the constitutional protection. As the Court in *Marchetti* observed, "(T)o have required him to present his claim to Treasury officers would have obliged him 'to prove guilt to avoid admitting it.'" 390 U.S. at 50, 88 S.Ct. at 704. Nor can it be contended that the privilege was waived on the discredited theory of Lewis v. United States, 348 U.S. 419, 75 S.Ct. 415, 99 L. Ed. 475, that the registration and occupational tax requirements do not infringe the constitutional privilege because they do not compel self-incrimination, but merely impose upon the gambler the initial choice of whether he wishes, at the cost of his constitutional privilege, to commence wagering activities. Finding that such a constructive waiver of the privilege would exclude it from situations in which it has been historically guaranteed, the Supreme Court in *Marchetti* specifically overruled *Lewis* on this point. In the language of Justice Harlan,

> We find this reasoning no longer persuasive. * * * To give credence to such "waivers" without the most deliberate examination of the circumstances surrounding them would ultimately license widespread erosion of the privilege through "ingeniously drawn legislation." * * * We cannot agree that the constitutional privilege is meaningfully waived merely because those "inherently suspect of criminal activities" have been commanded either to cease wagering or to provide information incriminating to themselves, and have ultimately elected to do neither. 390 U.S. at 51, 52, 88 S.Ct. at 704.

If the injunctive relief requested by the government were granted here, the government would have succeeded in accomplishing indirectly what the Supreme Court in *Marchetti* held they could not do directly by criminal proceedings. As in *Marchetti*, defendants would be forced to cease wagering, or else to provide information incriminating to themselves, the sanction for non-compliance being criminal contempt proceedings before this Court.

*Marchetti* did not turn on the type of proceeding in which the privilege is asserted. The fact that the proceedings at which the privilege is claimed are criminal is not what triggers the validity of the claim of privilege; rather, it is the risk of prosecution for substantive crimes by both federal and state authorities, which makes the information requirement constitutionally infirm when met with the claim of privilege.

That the *Marchetti* privilege is available in civil actions, as well as in criminal actions, is amply demonstrated by United States v. Angelini (7th Circuit, decided April 9, 1968, No. 15502, United States v. United States Coin and Currency in Amount of $8,674.00, 393 F.2d 499). That case was a civil action brought by the United States under Section 7302 of the Internal Revenue Code for seizure of $8,674.00 in cash, on the ground that it had been used in violation of the internal revenue laws, specifically, the wagering tax provisions. Angelini had earlier been convicted of violation of the wagering tax laws, 346 F.2d 278 (7th Cir. 1965), cert. denied, 382 U.S. 838, 86 S.Ct. 86, 15 LEd.2d 80, the money having been used as evidence against him. The District Court made a finding that the money had been used in a bookmaking business in violation of internal revenue laws and entered an order of forfeiture. On appeal, Angelini contended that the underlying statutory provisions violate the self-incrimination clause of the fifth amendment. In its opinion, No. 15502, decided June 27, 1967, 379 F.2d 946, the Court of Appeals for this Circuit indicated its awareness of the substantiality of a claim of the privilege even in a civil proceeding but affirmed the District Court. After the Supreme Court's opinions in *Marchetti* and *Grosso*, certiorari was granted; the judgment was vacated; and the case remanded for reconsideration in light of *Marchetti*. Angelini v.

United States, 390 U.S. 204, 88 S.Ct. 899, 19 L.Ed.2d 1035. In a per curiam opinion dated April 9, 1968, the 7th Circuit then reversed the forfeiture order and remanded the *Angelini* case to the District Court for entry of a judgment in favor of the claimant, Angelini, holding that the *Marchetti* privilege is available even in a non-criminal proceeding.

■ Since wagering is an area permeated with criminal statutes, and since the information required by the elaborate reporting requirements of the federal wagering tax laws would, if furnished, expose a taxpayer to real and appreciable hazards of self-incrimination, it is the opinion of this Court that a taxpayer faced with the reporting requirements of the federal wagering tax laws may assert the privilege against self-incrimination at the time the tax is due, or he may, without waiving his privilege, await coercive action by the government. If the effect of any action to enforce the wagering tax laws, whether civil or criminal, is to coerce the taxpayer into complying with the registration and reporting requirements, then the assertion of the privilege is a bar to the proceeding.[1] To hold otherwise would be to substantially cut down the scope of the privilege as defined in *Marchetti*.

■ Here, as in *Marchetti*, "The question is not whether petitioner holds a 'right' to violate state law, but whether having done so, he may be compelled to give evidence against himself." 390 U.S. at 51, 88 S.Ct. at 704. Hence, in denying the injunctive remedy sought by the government here, this Court does not hold that defendants have the right to gamble; the Court holds only that if the defendants have engaged in gambling enterprises, they have the right not to be coerced into furnishing information or evidence incriminating to themselves. Whatever substantive crimes they may have committed by their wagering activities, their failure to file wagering tax

returns is justified by their claim of the privilege against self-incrimination. Consequently, the underlying facts pleaded by the government here, detailing the past gambling activities of these defendants, does not support injunctive relief, since defendants have justified their failure to comply with the wagering tax provisions.

In accordance with the foregoing opinion, plaintiff's motion for temporary and permanent injunctive relief is denied; defendants' motion to dismiss, treated as a motion for summary judgment, is allowed.

---

1. A civil action for collection of wagering excise taxes due would not seem to violate the privilege, provided the govern- ment could prove liability for the tax without exacting any disclosures from the taxpayer.