**UNITED STATES of America, Libellant,**

v.

**$3,296.00 IN CURRENCY.**

**Civ. No. 10008.**

United States District Court
N. D. New York.

June 27, 1968.

Justin J. Mahoney, U. S. Atty., Northern District of New York, Albany, N. Y., for libellant (James W. Dolan, Asst. U. S. Atty., of counsel).

Kouray & Kouray, Schenectady, N. Y., for claimant (Christian X. Kouray, Schenectady, of counsel).

## OPINION

RYAN, District Judge.

The United States of America instituted this suit under the provisions of Section 7302, Title 26, U.S.C.,[1] by the filing on March 26, 1964, of a Libel praying for forfeiture of $3,296.00 in currency. The money was seized on September 26, 1963 by officers of the Internal Revenue Service in premises known as John's Newsroom, at 155 Clin-

ton Street, Schenectady, New York. It is alleged by the Government that the currency was intended for use and was previously used by Evaristo Marcerola (also known as "Joe" and Joseph Marcerola) in his bookmaking operation at the premises without having paid the occupational tax required by Section 4411, Title 26, U.S.C., and without having registered as required by Section 4412, Title 26, U.S.C. Marcerola has filed an answer, claiming the currency as his property, alleging that it was not subject to condemnation and forfeiture by the United States, and praying for its return.

A trial of the suit upon these pleadings was had to the Court before the late Senior Judge Stephen W. Brennan. The matter was awaiting his decision at the time of his death.

The suit has come to me by assignment from Chief Judge Foley during my designation to sit in the Northern District of New York. The attorneys and claimant in person have stipulated that this suit may be determined by me on the transcript of the trial before Judge Brennan with the exhibits and briefs already filed. Although the parties have stipulated that further evidence may be received and oral argument had, if I so desire, I have found this unnecessary. This opinion includes my factual findings of fact and conclusions of law.

At the outset of the trial, the Court granted claimant's motion to amend his answer to plead the affirmative defense "that the statute requiring registration by gamblers is unconstitutional" (Sections 4411 and 4412, Title 26, U.S.C.A.) and that, therefore, the forfeiture provisions of Section 7302, Title 26, U.S.C., may not be applied to violations of Sections 4411 and 4412. I have concluded for the reasons hereinafter stated that judgment must be given in favor of the claimant directing the return of the cur-

---

1. Section 7302, Title 26, U.S.C., provides in part that:
   "It shall be unlawful to have or possess any property intended for use in violating the provisions of the internal revenue laws, or regulations prescribed under such laws, or which has been so used, and no property rights shall exist in any such **property** * * *."

rency to him. I have nevertheless made factual findings on the evidence, so that in the event I am found to be in error on appeal a further trial will not be necessary.

The trial transcript consists only of the testimony of Government witnesses. The claimant rested at the close of the Government's case; he called no witnesses and the claimant did not testify.

I find from the evidence the following facts, as uncontradicted:

The premises occupied as "John's Newsroom" at 155 Clinton Street, consisted of a front store in which there were a table, a counter with a cash register, a mirror and a shelf, and a rear room, access to which was through the store, which was large enough to accommodate a number of men. It was furnished with card tables, a couple of television sets, a wall blackboard with football scores on it, and a one-way mirror facing into the store, through which one could look out from the rear room into the store.

■■■ The files of the Court, of which judicial notice is taken, establish:

1. A search warrant was issued on September 25, 1963 by United States Commissioner Solomon upon affidavit of Special Agent Schirmer in the matter of United States v. Premises known as John's News Room, 155 Clinton Street, Schenectady, New York and a return was duly filed September 26, 1963.

2. A warrant of arrest was issued on the same day by Commissioner Solomon upon affidavit of complaint by Agent Schirmer for arrest of the claimant herein for violation of Sections 4411 and 4412, Title 26, U.S.C. It was executed and return filed on September 26, 1963.

The regularity of the search warrant and warrant of arrest are not challenged, nor is the legal sufficiency of the affidavits upon which they issued questioned.

I also take judicial notice of the fact that following Marcerola's arrest a criminal Information was filed charging in three counts violations of Sections 4411, 4412(a), 7203 and 7262, Internal Revenue Code of 1954; and that on November 4, 1963, Marcerola pleaded guilty to Counts 1 and 2 and on November 18, 1963, a fine of $500 was imposed on each of these two counts, and Count 3 was dismissed.

From this record proof, as well as from the oral testimony at trial, I find that during the times material the claimant Marcerola was in a bookmaking and wagering operation.

The factual question presented is whether sufficient evidence has been presented to sustain the Government's burden of establishing that the currency or any portion of it was so closely connected with this gambling operation so that it can be held to be an instrumentality used and employed in it, thus requiring forfeiture.

It was undisputed that at the time of his arrest, the money taken from Marcerola's right trouser pocket amounted to $2560.00, consisting of thirteen $100 bills, eight $50 bills and forty-three $20 bills; and that the money taken from Marcerola's left trouser pocket amounted to $669.00, consisting of eight $20 bills, forty-two $10 bills, fourteen $5 bills and nineteen $1 bills; and that in the cash register was found a total of $67, consisting of one $10 bill, ten $5 bills and seven $1 bills.

I find that in an envelope found on the shelf in the front store at the time the search warrant was executed, there were 55 slips recording horse racing bets on horses recorded on the slips as running in a stated race at a named track, and checking these against racing forms showed that forty-seven were slips of horses running as recorded at the named track in the particular race on September 26, 1963. I find also that on a majority of these slips bets were recorded on two or more horses, and that the total of the bets recorded on the 47 slips

was $601.00 and that the remaining 8 slips were folded over separate from the others and recorded bets on horses which had run on the previous day.

I credit the testimony of Special Agent Schirmer and find that from August 3, 1963 through September 26, 1963, he placed bets with Marcerola at 155 Clinton Street on thirteen days and that on nine of these occasions Marcerola put the money paid over by Schirmer to cover the bets in his trouser pocket; and that on five occasions, Marcerola had paid Schirmer off on winning bets with money he took from his trouser pocket. I also find that on September 6, 1963 Schirmer placed two bets totaling $11.00 with John DeBraccio, who worked for or with Marcerola, giving him a $20.00 bill and a $1 bill, and that DeBraccio went to the cash register in the store and took a $10 bill from it which he gave to Schirmer in change; that again on September 16, 1963, Schirmer placed three bets totaling $8 with DeBraccio, who took the $2 change from the cash register; and again on September 23, 1963 DeBraccio put into the cash register $19 which Schirmer paid him to cover 4 bets.

I note again that, although Marcerola had given a fanciful tale at the time of his arrest as the reason why he had such a large sum of money on his person, he offered no evidence to support his story.

I do not regard as at all significant the fact that a $5 bill, Serial No. B795607, given to Marcerola when Special Agent Schirmer placed a $5 bet with him at 12:10 P.M. on September 26, 1963, was not found amongst the currency seized in the search made at 2:30 P.M. of the same day. The slips show that 47 bets were placed on September 26, 1963; it is fair to infer that the bill was disbursed in either giving change to the bettors or used in paying out winnings.

I subscribe completely to the observations of Judge Brennan made at the conclusion of the trial, when he said:

"* * * it is naive to assume that a wagering operation is conducted with house money. There is plenty of evidence here to show that this claimant was engaged in a wagering operation. I think it is a question of fact as to what part of the money, if any, was so closely connected with the gambling operation as to require its forfeiture."

I have applied the standards and tests set forth by Judge Brennan in United States v. $2,223.40 In Currency, D.C., 157 F.Supp. 300. See also, United States v. $8,674.00, 379 F.2d 946 (7 Cir., 1967); United States v. $1,058.00 In Currency, 323 F.2d 211 (3 Cir., 1963). I conclude that the evidence establishes that all of the currency in suit was so closely connected with Marcerola's gambling operations and was so used in this business as to require forfeiture. This leaves to be answered only the question of law which was raised by the claimant's challenge to the applicability of the provisions of Section 7302, to arrests made for violations of Sections 4411 and 4412.

The decisions of the Supreme Court in Marchetti v. United States, 390 U.S. 39, 88 S.Ct. 697, 19 L.Ed.2d 889, and Grosso v. United States, 390 U.S. 62, 88 S.Ct. 709, 19 L.Ed.2d 906, both decided January 29, 1968, held that Sections 4411, 4412 and 7272 were unconstitutional because "the statutory requirements of registration and payment of a wagering tax involved a significant hazard of self-incrimination" (United States v. Manfredonia and Colarusso, 2nd Cir., 391 F.2d 229, March 14, 1968). Following *Marchetti* and *Grosso,* several convictions under these statutes were vacated in this circuit. (See United States v. Fincher, 2nd Cir., 391 F.2d 603, February 15, 1968; United States v. Manfredonia, supra, and United States v. Millo, 2d Cir., 392 F.2d 591, April 25, 1968.)

The question of whether a seizure and confiscation may be made under Section 7302, for a violation of the wagering tax statutes (Sections 4411, 4412 and 7272), following *Marchetti* and *Grosso,* was presented on appeal in the Sixth and Seventh Circuits, with differing results.

It was written in United States v. One 1965 Buick, 392 F.2d 672 (6th Cir., April 17, 1968) that

> "The mere fact that an exclusionary rule of evidence may prevent a conviction for the criminal offense of violating the Internal Revenue laws, does not expunge civil liability for payment of the tax." (p. 676)

and that

> "The Supreme Court in Marchetti did not hold that the wagering tax statutes as such were unconstitutional." (p. 676)

That Court sustained a seizure under Section 7302 for violations of Sections 4411 and 4412.

In United States v. United States Coin and Currency, Angelini, Claimant, 7th Cir., 393 F.2d 499, April 9, 1968, it was held that:

> "The only apparent purpose of 26 U. S.C. § 7302, as applied here, is to punish violators of Sections 4411 and 4412 of the Internal Revenue Code by taking away money used in committing the violations. See One 1958 Plymouth Sedan v. Com. of Pennsylvania, 380 U.S. 693, 700, 85 S.Ct. 1246, 14 L.Ed.2d 170. As a practical matter, Marchetti means that such violations are no longer punishable directly. It follows that they should not be punished indirectly through forfeiture."

In this District, Judge Tyler granted claimant's motion for summary judgment in a libel filed under Section 7302 following an alleged violation of Sections 4411 and 4412 (See U.S. v. $125,882 In U.S. Currency, 286 F.Supp. 643, filed May 8, 1968, and June 6, 1968 on Government's Application for Reargument).

 I agree with Judge Tyler's views and follow the law as stated by the Seventh Circuit in United States v. United States Coin and Currency, Angelini, Claimant, supra. I grant judgment to the claimant, without prejudice, however, to the Government's proceeding against the fund or any person by assessment, lien, or other lawful procedure or process to secure payment of any monies claimed to be due to it. (See opinion of Wyatt, J., in Pizzarello v. U. S., 285 F.Supp. 147, filed May 31, 1968.)

Appropriate judgment may be settled before me. So ordered.