UNITED STATES of America, Appellee,

v.

Eugene J. HANON, Appellant.

UNITED STATES of America, Appellee,

v.

Gloria MEYER, Appellant.

UNITED STATES of America, Appellee,

v.

John L. BOVERI, Appellant.

Nos. 19519–19521.

United States Court of Appeals, Eighth Circuit.

June 8, 1970.

Lay and Heaney, Circuit Judges, dissented and filed opinion.

Stanley M. Rosenblum, of Rosenblum & Goldenhersh, St. Louis, Mo., for appellant Hanon; Merle L. Silverstein, St. Louis, Mo., on brief.

Daniel P. Reardon, Jr., St. Louis, Mo., for appellants Meyer and Boveri.

Sidney M. Glazer, Atty., Dept. of Justice, Washington, D. C., for appellee; Daniel Bartlett, Jr., U. S. Atty., St. Louis, Mo., and Mark W. Perrin, Sp. Atty., Dept. of Justice Washington, D. C., on brief.

Before VAN OOSTERHOUT, Chief Judge, and MATTHES, BLACKMUN, MEHAFFY, GIBSON, LAY, HEANEY and BRIGHT, Circuit Judges, en Banc.

VAN OOSTERHOUT, Chief Judge.

A panel of this court by opinion filed January 7, 1970, reversed the judgments

of conviction in these cases. Pursuant to the affirmative vote of a majority of the active judges under Rule 35, Federal Rules of Appellate Procedure, a rehearing en banc has been ordered in these cases and the appeals have been heard by the court en banc.

Defendant John L. Boveri was charged in Counts I and II of an indictment with violating 18 U.S.C.A. § 1952 by unlawfully, willfully and knowingly engaging in gambling activities in violation of Missouri law through the use of the facilities of interstate commerce.

Boveri and defendants Gloria Meyer and Eugene J. Hanon in Count III were charged with conspiracy, under 18 U.S.C.A. § 371, to violate 18 U.S.C.A. § 1952.

Boveri was convicted by a jury on all three counts. Meyer and Hanon were convicted on Count III. Each of the defendants has taken this timely appeal from their convictions and the resulting sentences.

Each defendant has as a basis for reversal urged:

1. Error in failing to suppress evidence seized in searches made at each of their residences in violation of their Fourth and Fifth Amendments rights.

2. Failure to sustain motion for acquittal based on insufficiency of the evidence to support the conviction.

We affirm the convictions for the reasons hereinafter stated.

The intelligence agents of the Internal Revenue Service began an investigation of the gambling activities of defendant Boveri and others in April of 1967. Richard Sirmer, who had served as a clerk in Boveri's bookmaking operation, gave the officials information as to Boveri's gambling operations which an independent investigation by the agents showed to be reliable. Applications for search warrants, supported by detailed affidavits, were filed with the United States Commissioner, who on August 12, 1967, issued search warrants authorizing a search of the homes of Boveri, Meyer and Hanon for gambling paraphernalia. The warrant affidavits set forth proba-

ble cause for violation of 26 U.S.C.A. §§ 4101, 4411, 4412, 4901, 7201, 7203 and 7262. No mention was made of probable cause for violation of 18 U.S.C.A. §§ 1952 and 371. The warrants were served on July 13, 1967, and gambling paraphernalia was seized at each of the defendant's homes.

Thereafter, on July 28, 1967, criminal informations were filed against each defendant charging violation of 26 U.S.C.A. § 7203—failure to pay occupational tax. After the Supreme Court decisions in Marchetti v. United States, 390 U.S. 39, 88 S.Ct. 697, 19 L.Ed.2d 889, and Grosso v. United States, 390 U.S. 62, 88 S.Ct. 709, 19 L.Ed.2d 906, decided on January 29, 1968, the § 7203 charges against each defendant were dismissed on the motion of the United States Attorney.

On June 20, 1968, the indictment upon which the defendants were convicted was filed. Defendants each moved to suppress the evidence seized on the basis that the warrants were not issued upon probable cause, that the warrants were based upon charged violations of statutes which have been declared unconstitutional and that the Fourth and Fifth Amendment rights of the defendants had been violated. The motions to suppress were overruled and the evidence seized under the search warrants was received at the trial.

### I.

Since the evidence seized in this case was seized under a warrant which alleged probable cause for violations of the taxing and registration statute and not the Travelers Act, the Fourth Amendment issue in this case is whether probable cause for a violation of a statute which is later declared subject to constitutional defense is enough to authorize a search and seizure, the fruits of which are offered into evidence for another offense.

The defendants claim that there was no probable cause for the issuance of the search warrant. Probable cause

is based on the situation existing at the time of the issuance of the warrants. At such time, the controlling law was to be found in Lewis v. United States, 348 U.S. 419, 75 S.Ct. 415, 99 L.Ed. 475, and United States v. Kahriger, 345 U.S. 22, 73 S.Ct. 510, 97 L.Ed. 754. Under the holdings of the cases just cited, probable cause for the issuance of the warrants is clearly established.[1]

The affidavits for the issuance of the search warrants were detailed and conformed to the requirements of Rule 41, Fed.R.Crim.P., and the governing law as stated in Spinelli v. United States, 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637; Aguilar v. Texas, 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723.

To hold that probable cause cannot be based on a statute which was valid when the search warrants were issued would in effect apply the *Marchetti* and *Grosso* cases retroactively in a Fourth Amendment context. No retroactive effect on the probable cause issue should be given to *Marchetti* and *Grosso* for the reasons that such effect was rejected in Linkletter v. Walker, 381 U.S. 618, 619, 85 S.Ct. 1731, 14 L.Ed.2d 601 (Mapp v. Ohio, 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081, not applied retroactively), and Desist v. United States, 394 U.S. 244, 89 S.Ct. 1030, 22 L.Ed.2d 248, (Katz v. United States, 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576, denied retroactive application). As stated in *Desist,* " 'there is no likelihood of unreliability or coercion present in a search-and-seizure case'; the exclusionary rule is but a 'procedural weapon that has no bearing on guilt,' and 'the fairness of the trial is not under attack.' " 394 U.S. 244, 250, 89 S. Ct. at 1034.

■ The purpose of the Fourth Amendment is to protect citizens against unnecessary intrusions into their priva-cy. Berger v. New York, 388 U.S. 41, 59, 87 S.Ct. 1873, 18 L.Ed.2d 1040; Warden, Md. Penitentiary v. Hayden, 387 U.S. 294, 301, 87 S.Ct. 1642, 18 L. Ed.2d 782; Jones v. United States, 357 U.S. 493, 498, 78 S.Ct. 1253, 2 L.Ed.2d 1514. We hold that compliance with the provisions of Rule 41, providing for the issuance of a search warrant based on probable cause for a violation of a then valid statute, adequately protects the individual's right of privacy guaranteed by the Fourth Amendment. Camara v. Municipal Court, 387 U.S. 523, 534, 87 S.Ct. 1727, 18 L.Ed.2d 930.

■ The fact that the warrants were based on gambling operations violative of revenue statutes and that the present convictions were based on violation of 18 U.S.C.A. § 1952 and conspiracy to violate § 1952 is not significant. It is established that evidence lawfully seized under a valid search warrant or as an incident to a lawful arrest may be used against a party on trial for a different offense. Gouled v. United States, 255 U.S. 298, 311, 41 S.Ct. 261, 65 L.Ed. 647;[2] Williamson v. United States, 5 Cir., 285 F.2d 65; Harris v. United States, 10 Cir., 151 F.2d 837, 841. See Abel v. United States, 362 U.S. 217, 240, 80 S.Ct. 683, 4 L.Ed.2d 668.

The court committed no error in refusing to suppress the seized evidence on Fourth Amendment grounds.

The Fifth Amendment privilege against self-incrimination provides: "No person * *. * shall be compelled in any criminal case to be a witness against himself." The defendants make two privilege against self-incrimination arguments: (1) All defendants argue that because they did not incriminate themselves (register and pay the tax) the government was able to obtain evidence against them. They argue that

---

1. We express no view on whether probable cause would exist in the present factual situation if the warrants had been issued subsequent to the *Marchetti* and *Grosso* opinions.

2. *Gouled* treated other issues, such as mere evidence exclusion. Warden, Md. Peni-tentiary, v. Hayden, 387 U.S. 294, 87 S. Ct. 1642, 18 L.Ed.2d 782 overrules *Gouled* on the mere evidence exclusion issue but nothing therein impairs the validity of the *Gouled* decision upon the issue for which it is cited.

the *use* of this evidence violates the privilege against self-incrimination because it is "punishing" them for refusal to incriminate themselves. (2) Defendants Boveri and Meyer argue that the evidence seized as a result of the search of their homes may not be used as evidence because it is testimonial in nature and thereby protected by the privilege against self-incrimination.

In support of their contention that they are being punished for not incriminating themselves, defendants rely largely upon the reasoning of Judge Frank A. Kaufman in Silbert v. United States, 282 F.Supp. 635, and a supplemental opinion at 289 F.Supp. 318. Judge Kaufman squarely holds "that the searches and seizures did not, when they were made, violate the proscriptions of the Fourth Amendment or of Federal Criminal Rule 41." 282 F.Supp. 635, 646. He then points out that the Government has been guilty of no improper conduct in obtaining the warrant and making the seizures, and goes on to say:

> "However, the non-culpability of the Government in relation to the issues considered by the Court concerning the raids in these cases does not answer the questions raised herein in a Fifth Amendment context. The opinions in *Marchetti* and *Grosso* discuss policies unrelated to Government wrongdoing and lay great stress upon the fact that the federal wagering tax statutes and the Government's enforcement machinery in connection therewith not only create a federal statutory scheme, but also are keyed to aiding the states in connection with ascertaining and successfully prosecuting violations of comprehensive state and local wagering prohibitions. *Marchetti* and *Grosso* both emphasize that one of the principal bases for the doctrines therein enunciated is that a person who is subject to the wagering tax provisions of Title 26 must make a choice between Scylla and Charybdis, in determining whether to violate those provisions, or to incriminate himself under state law and perhaps

other federal laws by complying with the federal wagering tax requirements. The Supreme Court stated, in *Marchetti* and *Grosso*, that the exercise of the Fifth Amendment privilege against self-incrimination may not be so encumbered and abridged." 282 F.Supp. 635, 647.

Judge Kaufman then points out that the evidence could not have been obtained under the search warrants if the defendants had not "chosen to avoid incriminating themselves by failing to comply with the federal wagering tax law requirements" and that they have thus been afforded "curtailed self-incrimination protection and limited constitutional comfort." 282 F.Supp. 635, 647.

In our view, the reasoning of the *Silbert* cases is directed to the issue of whether *Marchetti* and *Grosso* should be retroactively applied on the issue of probable cause for a search. Judge Kaufman applies those cases retroactively in this context because he finds that the privilege against self-incrimination would be in some way diminished by failure to suppress. We cannot agree.

We find the Fifth Amendment grounds advanced by the defendants for applying *Marchetti* and *Grosso* retroactively on the search and seizure issue not compelling. The Fifth Amendment protects a person from being required to give testimonial disclosures. The issue of the legality of the search under the Fourth Amendment is separate and distinct from the issue of whether the evidence seized is self-incriminating.

The position we have taken is supported by DiPiazza v. United States, 6 Cir., 415 F.2d 99, 106–107; Kuhn v. United States, 6 Cir., 415 F.2d 111; State v. Sellaro, Mo., 448 S.W.2d 595, 597; State of New Jersey v. Gerardo, 53 N.J. 261, 250 A.2d 130; United States v. Yeagle, E.D.Ky., 299 F.Supp. 257, 259.

The Fifth Amendment problem before us resembles that presented in United States v. Knox, 396 U.S. 77, 90 S.Ct. 363, 24 L.Ed.2d 275. In that case, the

Supreme Court by a six-to-two vote rejected defendant's contention that the two counts charging the defendant with willfully and fraudulently stating the number of employees accepting wagers on his behalf violated 18 U.S.C.A. § 1001. Defendant contended that if he had filed truthful returns, he would have incriminated himself under § 4412 and that if he had filed no returns at all, he would have subjected himself to punishment under § 7203, and that in choosing to file a false return he chose the least of three evils and that thus his choice was involuntary under the Fifth Amendment. In rejecting this argument, the Court states:

> "For this proposition Knox relies on United States v. Lookretis, 398 F.2d 64 (C.A. 7th Cir. 1968), where, after this Court had remanded for reconsideration in light of *Marchetti*, see 390 U.S. 338, [88 S.Ct. 1097, 19 L.Ed.2d 1219] (1968), the Court of Appeals ruled that truthful disclosures made under the compulsion of § 4412 could not be introduced against their maker in a criminal proceeding. However, the Fifth Amendment was offended in *Lookretis* precisely because the defendant *had* succumbed to the statutory compulsion by furnishing the requested incriminatory information. Knox does not claim that his prosecution is based upon any incriminatory information contained in the forms he filed, nor that he is being prosecuted for a failure to supply incriminatory information. He has taken a course other than the one that the statute was designed to compel, a course that the Fifth Amendment gave him no privilege to take.

> "This is not to deny that the presence of §§ 4412 and 7203 injected an element of pressure into Knox's predicament at the time he filed the forms. * * * But when Knox responded to the pressure under which he found himself by communicating false information, this was simply not testimonial compulsion." 396 U.S. 77, 82, 90 S.Ct. 363, 366.

See Bryson v. United States, 396 U.S. 64, 90 S.Ct. 355, 24 L.Ed.2d 264.

*Marchetti*, after holding that a person who has asserted his privilege against self-incrimination cannot be prosecuted for failure to register or pay the occupancy tax, carefully by way of limitation adds:

> "We emphasize that we do not hold that these wagering tax provisions are as such constitutionally impermissible; we hold only that those who properly assert the constitutional privilege as to these provisions may not be criminally punished for failure to comply with their requirements." 390 U.S. 39, 61, 88 S.Ct. 697, 709, 19 L. Ed.2d 889.

In our present case, defendants are not being punished criminally or otherwise for failure to comply with the wagering tax laws. They are being punished for violating § 1952, proscribing interstate gambling. The failure to register or pay the tax is not an element of the § 1952 charge. Defendants have not complied with the registration or tax laws and no evidence has been offered or received in their trial before the jury with respect to violation of the wagering tax laws. The only way the wagering tax is here involved is that it offers probable cause under the Fourth Amendment for the search. Probable cause for the search is a Fourth Amendment issue and such issue has heretofore been discussed and decided adversely to the defendants.

Counsel for Boveri and Meyer has by supplemental brief on rehearing for the first time raised the issue that the items seized were compelled communications or testimony protected by the Fifth Amendment. Counsel for Hanon does not raise such issue. In Hanon's supplemental brief, counsel in effect concedes that the evidence seized under the search warrants directed to the various defendants was physical, non-testimonial evidence (gambling paraphernalia). All members of the panel participating in the hearing on the original ap-

peal agreed that the seized items were not testimonial. The items consisted of telephone numbers, betting tabs, checks, money, betting settlement cards, racing forms and baseball scoreboards, containing names and numbers written after each of them, and other items all of which would fall in the general category of gambling paraphernalia. Counsel for Boveri and Meyer has failed to point to the specific evidence which he claims is communicative or testimonial or the reasons why it should be so considered.

Moreover, if any evidence seized could be considered incriminating and testimonial, the problem still remains as to whether such testimony was the product of any sort of coercion. In Hoffa v. United States, 385 U.S. 293, 303–304, 87 S.Ct. 408, 414, 17 L.Ed.2d 374, an informer had reported the defendant's incriminating testimonial disclosures. In rejecting defendant's claim that such evidence should be suppressed on Fifth Amendment ground, the Supreme Court held:

"In the present case no claim has been or could be made that the petitioner's incriminating statements were the product of any sort of coercion, legal or factual. The petitioner's conversations with Partin and in Partin's presence were wholly voluntary. For that reason, if for no other, it is clear that no right protected by the Fifth Amendment privilege was violated in this case."

We are satisfied that none of the entries made upon any of the seized evidence was the result of any sort of coercion.

We reject all contentions that defendants' Fifth Amendment protection against self-incrimination has been violated.

## II.

Defendants raise a number of contentions in support of their claim that error was committed in overruling their motions for judgment of acquittal. Defendants rested on the motions for acquittal made at the close of the Govern-

ment's case and offered no evidence in their own behalf. The contention that the seized evidence could not be received and hence could not be considered has been disposed of by our resolution of the constitutional issues.

Defendants urged that the trial court erroneously construed § 1952 as not requiring the prosecution to prove that the facilities of interstate commerce were used knowingly, willfully and intentionally. The pertinent portion of § 1952 reads:

"Whoever travels in interstate or foreign commerce or uses any facility in interstate or foreign commerce, including the mail, with intent to * * (3) otherwise promote, manage, establish, carry on, or facilitate the promotion, management, establishment, or carrying on of any unlawful activity * * * (b) As used in this section 'unlawful activity' means (1) any business enterprise involving gambling, * * *"

The court's construction of the statute is reflected by its instruction reading:

"With respect to Count I and Count II of the Indictment, it is necessary that the government prove beyond a reasonable doubt that John L. Boveri intended to promote, manage, establish, carry on or facilitate the promotion, management, establishment or carrying on of the business enterprise involving gambling offenses, which he knew to be in violation of the laws of the State of Missouri. It is not necessary that the government prove John L. Boveri intended to use interstate facilities or that he intended to violate federal law. However, it is necessary that interstate telephone facilities were, in fact, used and that John L. Boveri either used or caused them to be used."

Defendants' attack is directed to the last two sentences of the instruction quoted and substantially the same language contained in the conspiracy count instruction. Defendants objected to the instruction on the ground that it failed

to require the Government to prove knowledge of the use of or intent to use interstate facilities and to the failure of the court to give their tendered instruction setting forth knowledge and intent with respect to the use of interstate facilities as an essential element of the offense. We believe the court correctly interpreted the statute.

Federal jurisdiction of the crime here charged is based on the use of a facility of interstate commerce. The statute by its terms does not require the use of the facility to be intentional or willful. Defendants' argument on this issue in our view is conclusively answered by the well-reasoned opinion of Judge Beamer, supported by responsible authority, in United States v. Bash, N.D.Ind., 258 F. Supp. 807, and the affirming opinion, sub nom. United States v. Miller, 7 Cir., 379 F.2d 483. See United States v. Izzi, 7 Cir., 385 F.2d 412.

■ The evidence amply supports a finding of the existence of the gambling operation in violation of Missouri law as charged. Defendants concede that the record shows that interstate telephone calls placing wagers were made by John Grady from Alton, Illinois, to each of the defendants in Missouri. Such is a sufficient use of the interstate facility to establish the jurisdictional requirement of the use of an interstate facility. It is not necessary for the Government to prove defendants knew that the calls received from an out-of-state source were in fact out-of-state calls.

Lastly, defendant Hanon alone raises the issue that there is no substantial evidence to establish that he was a part of the alleged conspiracy. We have frequently considered and stated the standards to be applied in determining the sufficiency of evidence to establish a conspiracy. See Koolish v. United States, 8 Cir., 340 F.2d 513, 523–524; Isaacs v. United States, 8 Cir., 301 F.2d 706, 725.

Secrecy and concealment usually prevail in a successful conspiracy. Hence a conspiracy can seldom be established by direct evidence. As stated in *Koolish*:

" 'Participation in a criminal conspiracy need not be proved by direct evidence; a common purpose and plan may be inferred from a "development and a collocation of circumstances".' * * *'Once there is satisfactory proof that a conspiracy has been formed, the question of a particular defendant's connection with it may be merely a matter of whether the stick fits so natural into position in the fagot as to convince that it is a part of it.' " 340 F.2d 513, 524.

■ In our present case, substantial evidence exists to support a finding that a conspiracy to engage in gambling operations contrary to Missouri law existed between Boveri, Meyer and others. Boveri and Meyer do not claim otherwise. Close connections between Boveri and Hanon are established. Hanon's code name assigned by Boveri and his telephone number were given by Boveri to his agents and customers. Boveri frequently instructed his agents to obtain odds on sporting events from Hanon and this was done. Hanon and Boveri made layoff bets with each other. The fact that Hanon also operated at times as an independent bookmaker does not foreclose his participation in the conspiracy.

We hold the defendants have had a fair trial and that no prejudicial error has been committed.

Our judgment filed January 7, 1970, reversing the judgment of conviction as to each defendant and remanding for a new trial is vacated and set aside. The judgment of conviction as to each defendant is affirmed.

LAY and HEANEY, Circuit Judges (dissenting).

This court holds today that the exercise of the privilege against self-incrimination, although no longer directly

punishable under *Marchetti-Grosso*,[1] is nevertheless subject to sanction.

Here the government used the defendants' exercise of their Fifth Amendment privilege against self-incrimination as the sole [2] basis for obtaining evidence to convict them. When the evidence was used (*post Marchetti-Grosso*), a "sanction" was thus effected against users of the privilege. The privilege is too sancrosanct to be so easily eluded and abused.

An individual's failure to register or pay the tax to avoid self-incrimination should not provide the direct avenue to obtain evidence to prosecute on other charges. Whether the government prosecutes for failing to pay the tax, or seizes evidence to prosecute under other criminal laws for such failure, makes little difference. In each instance it renders a penalty in response to a defendant's exercise of his Fifth Amendment rights. Whether it does so by direct or indirect means should be immaterial. If defendants' privilege not to register or pay the tax may serve as the basis of obtaining evidence for state or federal authorities to proceed on other charges, the dilution of the privilege has been accomplished, and the rationale of *Marchetti* and *Grosso* has been rendered meaningless. Today's holding means that the government has found the effective way to punish a defendant for exercising the privilege. The Hobson choice still exists. The recognition of this "whipsaw" effect is the true significance of Judge Kaufman's opinion in Silbert v. United States, 282 F.Supp. 635, 647 (D.Md.1968)[3] The identical question was faced by the Pennsylvania Supreme Court where Mr. Justice Roberts speaking for the full court in Commonwealth v. Katz, 429 Pa. 406, 240 A. 2d 809, 811 (1968), said:

"We therefore believe that if a federal prosecution based upon violations of sections 4411 and 4412 (and evidence seized to prove these violations) would infringe the accused's privilege against self-incrimination and if this privilege applies to the states, then a state prosecution based upon the same evidence seized by federal officers would equally violate that privilege. Were the rule otherwise, the *Marchetti* decision and its conclusion that prosecutions for violations of the federal statutes here involved run afoul of the fifth amendment could be easily eroded if state prosecutions based upon evidence seized by federal officers searching for violations of the now unconstitutional statutes were permitted. Whether this evidence is used in state or federal court, the evil is identical—an accused's failure to register and pay the tax, as well as evidence seized to prove this failure, becomes the basis of a criminal prosecution violative of the fifth amendment. Certainly, after *Marchetti*, the

---

1. Marchetti v. United States, 390 U.S. 39, 88 S.Ct. 697, 19 L.Ed.2d 889 (1968) and Grosso v. United States, 390 U.S. 62, 88 S.Ct. 709, 19 L.Ed.2d 906 (1968).

2. It is peculiarly significant here that the basis of the affidavit leading to the search alleged violation of only 26 U.S.C.A. § 7203 and related sections. Probable cause for a search under 18 U.S.C.A. § 1952 was not alleged, as it had been in DiPiazza v. United States, 415 F.2d 99 (6 Cir. 1969), cited in the majority opinion. (See appellant's supplemental brief, page 8, relying upon "Defendant's Exhibits No. 12 and No. 16, Appendix P. 38a and 43a, Cause No. 18593–18594, Sixth Circuit.") Allegation of a § 1952 violation within the affidavit materially distinguishes the instant facts.

3. Judge Kaufman's reasoning in *Silbert* (282 F.Supp. 635) is dismissed by the majority on the rationalization that he is attempting to apply *Marchetti-Grosso* retroactively in a Fourth Amendment context. We respectfully submit this misconstrues his concern over the encroachment upon the exercise of the defendants' Fifth Amendment rights. The sanction in *Silbert*, as here, was not at the time of the search but in the *use* of the evidence seized in a subsequent criminal prosecution. Retroactivity of *Marchetti-Grosso* is not an issue under either the *Silbert* case or here since the objectional encroachment on defendants' Fifth Amendment rights comes *after* the decision of *Marchetti-Grosso*.

evidence used to convict appellants could not be constitutionally admitted in a federal court; were we to admit it, we believe that an identical constitutional violation would be committed."[4]

The fact that the evidence seized is not itself self-incriminating is irrelevant to the discussion. In setting aside a conviction for contempt of court arising from the lawful exercise of the privilege the Supreme Court observed:

"The Fourteenth Amendment secures against state invasion the same privilege that the Fifth Amendment guarantees against federal infringement— the right of a person to remain silent unless he chooses to speak in the unfettered exercise of his own will, *and to suffer no penalty*, as held in [Twining v. New Jersey, 211 U.S. 78, 29 S. Ct. 14, 53 L.Ed. 97] *Twining*, for such silence." (Emphasis ours.) Malloy v. Hogan, 378 U.S. 1, 8, 84 S.Ct. 1489, 1493, 12 L.Ed.2d 653 (1964).

See also Hoffman v. United States, 341 U.S. 479, 71 S.Ct. 814, 95 L.Ed. 1118 (1951).

In Griffin v. California, 380 U.S. 609, 85 S.Ct. 1229, 14 L.Ed.2d 106 (1965), the Court considered *the effect* of a state prosecutor's comments that the defendant's silence was evidence of guilt. The Supreme Court observed:

"For comment on the refusal to testify is a remnant of the 'inquisitorial system of criminal justice,' Murphy v. Waterfront Comm'n, [of New York Harbor], 378 U.S. 52, 55, 84 S.Ct. 1594, 12 L.Ed.2d 678, which the Fifth Amendment outlaws. It is a *penalty imposed by courts for exercising a constitutional privilege. It cuts down on the privilege by making its assertion costly.*" (Emphasis ours.) Id. at 614, 85 S.Ct. at 1232.

See also Chapman v. California, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967).

The entire theme of subsequent decisions has demonstrated that the substance of the constitutional privilege is

---

4. This same rationale was used by the Seventh Circuit in United States v. United States Coin & Currency Amount of $8,674.00 (Angelini-claimant), 393 F.2d 499 (7 Cir. 1968), cert. granted 393 U.S. 949, 89 S.Ct. 375, 21 L.Ed.2d 361 (1968) in a forfeiture proceeding. The Court there said:

"The only apparent purpose of 26 U. S.C. § 7302, as applied here, is to punish violators of Sections 4411 and 4412 of the Internal Revenue Code by taking away money used in committing the violations. See One 1958 Plymouth Sedan v. Com. of Pennsylvania, 380 U.S. 693, 700, 85 S.Ct. 1246, 14 L.Ed.2d 170. As a practical matter, *Marchetti* means that such violations are no longer punishable directly. It follows that they should not be punished indirectly through forfeiture." 393 F.2d at 500. See 33 Albany L.Rev. 158 (1968). In accord, United States v. $3,296.00 in Currency, 286 F.Supp. 543 (N.D.N.Y.1968); United States v. $125,882 in U. S. Currency, 286 F.Supp. 643 (S.D.N.Y.1968); United States v. One 1967 Buick Electra 225, 289 F.Supp. 642 (D.N.J.1968); United States v. One Philco Television, 292 F.Supp. 35 (S.D.Tex.1968); United States v. Riccio, 282 F.Supp. 979 (N.D.

Ill.1968); cf. Pizzarello v. United States, 408 F.2d 579, 587 (2 Cir. 1969) (levy of jeopardy assessment). Contra: United States v. One 1965 Buick (Dean-claimant), 392 F.2d 672, on rehearing 397 F.2d 782 (6 Cir. 1968); United States v. Filing, 410 F.2d 459 (6 Cir. 1969); United States v. Yeagle, 299 F.Supp. 257 (E.D. Ky.1969). And compare Washington v. United States, 402 F.2d 3 (4 Cir. 1968). Certiorari was applied for in the *Dean* case on October 8, 1968, and the *Washington* case on December 13, 1968. These petitions are still pending before the Supreme Court.

If the ultimate decision of the Supreme Court is as the Sixth Circuit reasons, that a forfeiture proceeding is "civil" in nature (but see Boyd v. United States, 116 U.S. 616, 634, 6 S.Ct. 524, 29 L.Ed. 746 (1886)), then the *Dean* case is clearly distinguishable from one where the evidence seized is used in another criminal proceeding. However, if the *Angelini* ruling of the Seventh Circuit is affirmed, the evidence seized and subsequently used in a forfeiture proceeding is a punishment and criminal in nature. *Angelini* would thus serve as a binding and direct precedent in support of defendants' Fifth Amendment claims here.

cannibalized if individuals may be punished for exercising it. In Spevack v. Klein, 385 U.S. 511, 87 S.Ct. 625, 17 L. Ed.2d 574 (1967), involving a disbarment proceeding of a lawyer who refused to produce financial records and to testify at the inquiry, the Supreme Court observed:

"In this context 'penalty' is not restricted to fine or imprisonment. It means, as we said in Griffin v. California, 380 U.S. 609, 85 S.Ct. 1229, 14 L.Ed.2d 106, the imposition of any sanction which makes assertion of the Fifth Amendment privilege 'costly.' " Id. at 515, 87 S.Ct. at 628.

And quoting from Boyd v. United States, 116 U.S. 616, 634–635, 6 S.Ct. 524, 29 L.Ed. 746, the Court in Spevack added:

" 'It is the duty of courts to be watchful for the constitutional rights of the citizen, and against any stealthy encroachments thereon.' "

See also Uniformed Sanitation Men Ass'n, Inc. v. Commissioner of Sanitation, 392 U.S. 280, 88 S.Ct. 1917, 20 L. Ed.2d 1089 (1968); Slochower v. Board of Higher Education, 350 U.S. 551, 76 S.Ct. 637, 100 L.Ed. 692 (1956).

Although made in a different context, the words of Mr. Justice Frankfurter in Nardone v. United States, 308 U.S. 338, 60 S.Ct. 266, 84 L.Ed. 307 (1939), are pertinent here.

"To forbid the direct use of methods thus characterized but to put no curb on their full indirect use would only invite the very methods deemed 'inconsistent with ethical standards and destructive of personal liberty.' " Id. at 340, 60 S.Ct. at 267.

We need not perform any balancing act of weighing effects of a lawful search vis-a-vis an assertion of the privilege against self-incrimination. It remains fundamental that any significant encroachment on the freedom to exercise the privilege cannot receive sustenance under the law.[5]

The majority justifies applying a sanction to the defendants' exercise of the privilege here because the evidence in question was obtained by a legal search. They urge that evidence legally seized for one offense may be lawfully used for prosecution of another. While this is a correct statement of the law in other contexts, it is not valid here.[6]

5. The recent case of United States v. Knox, 396 U.S. 77, 90 S.Ct. 363, 24 L.Ed.2d 275 (1969), should not provide the government any comfort. As contrasted to the defendants' exercise of their privilege against self-incrimination in the instant case, by noncompliance with §§ 4412 and 7203, the Supreme Court in Knox makes clear that Knox's fraudulent filing under § 4412 was " * * * a course other than the one that the statute was designed to compel, *a course that the Fifth Amendment gave him no privilege to take.*" (Emphasis ours.) The indictment in Knox was upheld under inapposite principles to those involved here. The Supreme Court relied upon the reasoning in Bryson v. United States, 396 U.S. 64, 90 S.Ct. 355, 24 L.Ed.2d 264 (1969), decided the same date. In Bryson the Court emphasized the language of Dennis v. United States, 384 U.S. 855, 86 S.Ct. 1840, 16 L.Ed.2d 973 which stated:

"The governing principle is that a claim of unconstitutionality will not be heard to excuse a voluntary, deliberate and calculated course of fraud and de-

ceit. One who elects such a course as a means of self-help may not escape the consequences by urging that his conduct be excused because the statute which he sought to evade is unconstitutional. This is a prosecution directed at petitioner's fraud. It is not an action to enforce the statute claimed to be unconstitutional."

It is also clear that Knox dealt with the dismissal of an indictment and the Court reserved opinion as to the "compulsion" issue under Marchetti as "one that must be determined * * * at his trial." We in no way intimate that the defendants' indictment under § 1952 is invalid in the instant case.

6. In dissenting, since we feel a reversal necessary, we need not pass upon the issue argued on rehearing that the personal papers of the defendants seized were self-incriminatory so as to constitute an illegal search under the Fourth Amendment. See Boyd v. United States, 116 U.S. 616, 6 S.Ct. 524, 29 L.Ed. 746 (1886). This question, that is, "whether there are

The arguments alleging violations of the Fourth and Fifth Amendments are not equivalent in the present context. Cf. Schmerber v. California, supra. The majority's Fourth Amendment analysis fails to come to grips with the fact that a sanction has been applied to the defendants' lawful exercise of the Fifth Amendment privilege.

The argument that the lawful search erases the "compulsory" aspect in the production of the evidence seized [7] concerns itself with the nature of the evidence seized rather than with the subsequent sanction applied. The gravamen of the harm is that the defendants were forced to choose between providing evidence to prosecuting authorities by registration and payment of the tax *or* by failing to register and pay the tax, subjecting themselves to a search of their premises. The *compulsion* thus came prior to the search and not from the search itself. There would be no *harm* under this compulsion if the evidence seized was never used. However, in the instant case, the *penalty* for refusing to incriminate themselves came thereafter in the *use* of the evidence in prosecution under § 1952 and not from any incrimination arising from the evidence being lawfully seized.

One further observation should be offered. The government urged in *Marchetti* that the federal statute be enforced and that the privilege be protected by placing restriction upon the *use* of the evidence obtained. Cf. Murphy v. Waterfront Comm'n of New York Harbor, 378 U.S. 52, 84 S.Ct. 1594, 12 L.Ed. 2d 678 (1964). The Supreme Court reasoned, however, that such a rule would impair state prosecutions by possibly tainting the use of evidence otherwise lawfully seized. The Court observed that it would be too onerous a burden upon a state to always demonstrate that the evidence it had otherwise legally seized was not based upon information obtained as a consequence of a defendant's registration or payment of the tax. 390 U.S. at 59, 88 S.Ct. 697, 19 L.Ed.2d 889. With the rejection of the argument of restricted use, the government now seeks here to completely enervate the Supreme Court's holding by contending that the evidence obtained as a direct consequence of noncompliance may be used to prosecute defendants under other laws, regardless of how tainted the evidence may be. In our judgment, such circumlocution degrades the dignity of an individual's Fifth Amendment rights.

---

items of evidential value whose very nature precludes them from being the object of a reasonable search and seizure," was left open in Warden, Md. Penitentiary, v. Hayden, 387 U.S. 294, 303, 87 S.Ct. 1642, 1648, 18 L.Ed.2d 782 (1967). See also Schmerber v. California, 384 U.S. 757, 772, 86 S.Ct. 1826, 16 L.Ed.2d 908 (1966).

For a full discussion of the relationship between the Fourth and Fifth Amendments see The Fourth and Fifth Amendments—Dimensions of an "Intimate Relationship", 13 U.C.L.A.L.Rev. 857 (1966); Constitutional Law: Supreme Court Delineates the Relationship Between the Fourth and Fifth Amendments, 1967 Duke L.J. 366 (1967). Cf. Boyd v. United States, 116 U.S. at 633, 6 S.Ct. 524.

7. 8 Wigmore, Evidence § 2264 n. 4 (McNaughton rev. 1961).