**UNITED STATES of America,**
**Appellee,**

v.

James Russell **HAWTHORNE,** Appellant.

**No. 9817.**

United States Court of Appeals
Fourth Circuit.

Argued Dec. 9, 1965.

Decided Feb. 3, 1966.

Certiorari Denied April 18, 1966.

See 86 S.Ct. 1344.

Arnold M. Weiner, Baltimore, Md. and Sanford Jay Rosen (Court-assigned counsel), Baltimore, Md., for appellant.

Alfred N. King, Atty., Dept. of Justice (Milton J. Ferguson, U. S. Atty., on brief), for appellee.

Before HAYNSWORTH, Chief Judge, and SOBELOFF and J. SPENCER BELL, Circuit Judges.

J. SPENCER BELL, Circuit Judge:

The defendant, James Russell Hawthorne, was convicted by a jury of two charges of use of interstate facilities to promote illegal gambling enterprises and sentenced to concurrent five year terms of imprisonment.[1] The first count involved a trip made by the defendant on or about October 11, 1962, from Indiana to West Virginia. The second count involved the use of the facilities of Western Union to transfer $235.00, proceeds from several slot machines owned by the defendant and operated by his partner in Indiana, from that state to the defendant in West Virginia.

The evidence considered favorably to the government showed that early in 1962 the defendant went from his home in Indiana to Greenbrier County, West Virginia, where he investigated the possibility of opening a supper club which would provide gambling facilities to its patrons, in violation of the local law.[2] He discovered that one of the existing establishments could be rented and by June had proceeded as far as to discuss the possibility of renting paraphernalia with one of the government witnesses. In early summer Hawthorne returned to West Virginia and made further arrangements for operating his business. He had a corporation set up and entered into a six year lease beginning October 1, 1962. He then returned to Indiana in order to move his family to West Virginia. On October 2, 1962, Hawthorne and his wife purchased a mobile home in Elkhart, Indiana, for delivery to the premises of his supper club at White Sulpher Springs, West Virginia. On October 11th two tanks of bottled gas were connected up to the trailer. It was this trip which occurred on or about the 11th of October which was charged in the first count of the indictment.

It is freely conceded by the government that the immediate purpose of this trip was to move Hawthorne's family from Indiana to the new home. Such a purpose is not sufficiently related

1. 18 U.S.C.A. § 1952, provides:
"(a) Whoever travels in interstate or foreign commerce or uses any facility in interstate or foreign commerce, including the mail, with intent to—
(1) distribute the proceeds of any unlawful activity; or
(2) commit any crime of violence to further any unlawful activity; or
(3) otherwise promote, manage, establish, carry on, or facilitate the promotion, management, establishment, or carrying on, of any unlawful activity, and thereafter performs or attempts to perform any of the acts specified in subparagraphs (1), (2), and (3), shall be fined not more than $10,000 or imprisoned for not more than five years, or both.
(b) As used in this section 'unlawful activity' means (1) any business enterprise involving gambling, liquor on which the Federal excise tax has not been paid, narcotics, or prostitution offenses in violation of the laws of the State in which they are committed or of the United States, or (2) extortion, bribery, or arson in violation of the laws of the State in which committed or of the United States.
(c) Investigations of violations under this section involving liquor or narcotics shall be conducted under the supervision of the Secretary of the Treasury."

2. The West Virginia statute:
"Any person who shall keep or exhibit a gaming table, commonly called A. B. C. or. E. O. table, or faro bank, or keno table, or any other gaming table or device of like kind, under any denomination, or which has no name, whether the game, table, bank or device be played with cards, dice or otherwise, or shall be a partner, or concerned in interest, in keeping or exhibiting such table, bank or gaming device of any character, shall be guilty of a misdemeanor, and, upon conviction, shall be confined in jail not less than two nor more than twelve months and be fined not less than one hundred nor more than one thousand dollars. * * *" West Virginia Code of 1961, Chap. 61, Art. 10, § 1

to his gambling enterprise to bring it within the interdiction of the statute. We cannot hold that the purpose of that trip was to "promote, manage, establish, carry on, or facilitate * * *" his unlawful enterprise within the meaning of the statute. The statute was intended to make interstate travel or transportation in aid of racketeering enterprises a crime.[3]

It is not the intent of the statute to make it a crime per se for one who operates a gambling establishment to travel interstate. To so hold might raise serious questions of the constitutionality of the Act. See Twining v. State of New Jersey, 211 U.S. 78, 97, 29 S.Ct. 14, 53 L.Ed. 97 (1908); Kent v. Dulles, 357 U.S. 116, 78 S.Ct. 1113, 2 L.Ed.2d 1204 (1958); Zemel v. Rusk, 381 U.S. 1, 85 S.Ct. 1271, 14 L.Ed.2d 179 (1965). The government cites no case which supports its position. Masse v. United States, 210 F.2d 418 (5 Cir. 1954), cert. denied, 347 U.S. 962, 74 S.Ct. 711, 98 L.Ed. 1105, a Mann Act case, is not in point. While there it is true the court found that Masse was guilty even though his immoral conduct was not the sole purpose of *his* trip (he also travelled to get a divorce) the substantive offense in the Mann Act is the transportation of the female, not the interstate travel of the transporter himself. United States v. Sapperstein, 312 F.2d 694 (4 Cir. 1963); Williams v. United States, 271 F.2d 703 (4 Cir. 1959). In the instant case, however, the essential element of the crime is the interstate travel of the offender himself. We do not rest our decision on the fact that the first proven overt act of gambling did not occur until nearly five months after the trip in question. Other trips Hawthorne took prior to that charged in count one of the indictment were directly related to his enterprise, but the connection with this specific trip is too tenuous. Cf. Parr v. United States, 363 U.S. 370, 80 S.Ct. 1171, 4 L.Ed.2d 1277 (1960).

We think the defendant was properly convicted under the second count. We do not think the statute (18 U.S.C.A. § 1952) requires proof that the defendant knew that he was violating the Indiana law by operating slot machines in the state, although there was evidence from which the jury could have so found. Such knowledge was not required to convict under the Indiana statute. Worl v. State, 243 Ind. 116, 183 N.E.2d 594 (1962), and we think it sufficient under section 1952 that the defendant knowingly caused to be transmitted interstate by the Western Union money order proceeds of a gambling enterprise which was unlawful under the Indiana statute. Since we have held that the conduct charged in the first count did not violate the statute in question, we remand the case to the district court in order that the judge may reconsider the sentence given on the second count in the light of this opinion.

Reversed and remanded.

3. See generally: Senate Judiciary Committee Hearings. The Attorney General's Program to Curb Organized Crime and Racketeering, 87th Cong. 1st Sess. (1961).