**UNITED STATES of America**

v.

**Fenton Leon BASH and Samuel B. Woods.**

**Cr. No. 3662.**

United States District Court
N. D. Indiana,
Hammond Division.

Oct. 3, 1966.

Richard F. James, Asst. U. S. Atty., Hammond, Ind., for Government.

Max Cohen, Robert Garrett, Gary, Ind., for defendants.

BEAMER, District Judge.

Defendants, having been found guilty by a jury as charged in Counts I and III of the Indictment charging the use of an interstate facility in aid of unlawful gambling activity (Title 18 U.S.C. §§ 1952 and 2), have filed motions in arrest of judgment and for new trial.

Defendants' primary contentions in their post trial motions are that Title 18 U.S.C. § 1952[1] is unconstitutionally vague, indefinite, and ambiguous; and further that Title 18 U.S.C. § 1952 has been unconstitutionally applied in this case because the Court interpreted the statute as not requiring the jury to find that the defendants had formed a specific intent to violate the statute. More specifically with regard to the second point, defendants contend that to sustain a conviction under Title 18 U.S.C. § 1952, the government must prove that defendants knowingly intended to violate a Federal law and that the jury should have been permitted to consider defendants' asserted ignorance of their violation of a Federal statute in determining their guilt or innocence.

Several other courts have previously passed upon defendants' general

---

1. Title 18 U.S.C. § 1952 provides: "Interstate and foreign travel or transportation in aid of racketeering enterprises

(a) Whoever travels in interstate or foreign commerce or uses any facility in interstate or foreign commerce, including the mail, with intent to—

    (1) distribute the proceeds of any unlawful activity; or

    (2) commit any crime of violence to further any unlawful activity; or

    (3) otherwise promote, manage, establish, carry on, or facilitate the promotion, management, establishment, or carrying on, of any unlawful activity,

and thereafter performs or attempts to perform any of the acts specified in subparagraphs (1), (2), and (3), shall be fined not more than $10,000 or imprisoned for not more than five years, or both.

(b) As used in this section 'unlawful activity' means (1) any business enterprise involving gambling, liquor on which the Federal excise tax has not been paid, narcotics, or prostitution offenses in violation of the laws of the State in which they are committed or of the United States, or (2) extortion, bribery, or arson in violation of the laws of the State in which they are committed or of the United States.

(c) Investigations of violations under this section involving liquor or narcotics shall be conducted under the supervision of the Secretary of the Treasury. Added Pub.L. 87–228, § 1(a), Sept. 13, 1961, 75 Stat. 498, amended Pub.L. 89–68, July 7, 1965, 79 Stat. 212."

argument that Title 18 U.S.C. § 1952 is unconstitutionally vague, and all have rejected this contention. See United States v. Zizzo, 338 F.2d 577 (7th Cir. 1964) cert. den. 381 U.S. 915, 85 S.Ct. 1530, 14 L.Ed.2d 435; Bass v. United States, 324 F.2d 168 (8th Cir. 1963). The *Zizzo* and *Bass* cases involved travel in interstate commerce in aid of an unlawful gambling activity. The constitutionality of Title 18 U.S.C. § 1952 has also been upheld in cases involving the use of an interstate facility in aid of unlawful gambling activities. Turf Center Inc. v. United States, 325 F.2d 793 (9th Cir. 1963); United States v. Borgese, 235 F.Supp. 286 (D.C.N.Y.1964); United States v. Smith, 209 F.Supp. 907 (D.C.Ill.1962). The Court is in complete agreement with these cases which hold that although Section 1952 is admittedly broad, it is within the Constitutional power of Congress over interstate commerce and is not unconstitutional on the ground of vagueness.

■■■ Defendants' second contention, namely that a specific intent to violate the Federal law is a necessary element of an offense under Section 1952, has not yet been expressly ruled upon in any reported decision.[2] Defendants argue that the statutory language, in accordance with the principle that criminal statutes are to be strictly construed, requires a specific intent to violate the federal statute as an element of the offense. The relevant statutory language is as follows:

"*Whoever* * * * *uses* any facility in interstate * * * commerce * * * *with intent to* * * * promote, manage, establish, carry on, or facilitate the promotion [etc.] of any unlawful activity, and thereafter per-

forms * * * shall be fined * * *." (Emphasis added.)

Defendants contend that the words "with intent" relate back to the words "whoever uses" and should be construed to require use of an interstate facility with an intent to violate this federal law so that ignorance of the federal violation might constitute a defense. The Court is of the opinion that defendants' contention in this regard is without merit. Although criminal statutes are to be strictly construed, this does not require this Court to ignore the dictates of common sense and to defeat the very purpose of the act by creating unwarranted exceptions to its operation. Kordel v. United States, 335 U.S. 345, 349, 69 S.Ct. 106, 93 L.Ed. 52, 56 (1948). The words "with intent" obviously refer to the words immediately following, namely, "to * * * promote * * * or facilitate the promotion * * * of any unlawful activity * * *." The term "unlawful activity" is defined in so far as relevant here as "any business enterprise involving gambling * * * in violation of the laws of the State in which *. * * committed * * *." The criminal intent is the intent to promote or facilitate a gambling enterprise in violation of the laws of the State in question. In other words, the language of Title 18 U.S.C. § 1952 requires a specific intent to promote or facilitate the violation of state law and not a specific intent to violate the federal law. A defense based upon ignorance that activities were in violation of state law could be relevant on the issue of intent to promote or facilitate an activity in violation of state laws, whereas an assertion of ignorance that the activities were in violation of the federal statute is irrelevant in the

2. Turf Center Inc. v. United States, 325 F.2d 793 (9th Cir. 1964). The Court upheld an instruction on intent which appears to state, in substance, that the vital intent is the intent to promote etc. a business enterprise involving a gambling offense in violation of state laws, and that "ignorance of the law" could be considered by the jury in determining whether or not the accused "acted or failed to act with specific intent as charged". The Court made no express holding as to whether or not specific intent is an element under Section 1952, and if so, whether the specific intent must be to violate a federal law or whether such specific intent must exist with reference only to the promotion and facilitation of the unlawful gambling activity.

**810**

light of the statutory language. We conclude, therefore, that the words of the statute cannot be construed as requiring a specific intent to violate the federal statute nor does the statutory language make the defense of ignorance of the federal law available to the defendants.

The conclusion that the statutory language itself does not require a specific intent to violate the federal law does not, however, necessarily mean that such specific intent is not an element of the offense. The omission of any such express requirement in the statutory language still may not negate the requirement of specific intent under certain circumstances. For example, the Supreme Court has held that where an innocently passive person fails to register as a convicted felon as required by a city ordinance, because of ignorance of the existence of the ordinance and the registration requirement, a conviction of such a person is an unconstitutional application of the registration ordinance. Lambert v. People of State of California, 355 U.S. 225, 78 S.Ct. 240, 2 L.Ed.2d 228 (1957). The case at bar is distinguishable for two reasons:

1. In *Lambert,* the accused had no criminal intent whatsoever and the statute required none, whereas in the case at bar defendants admitted they had knowingly violated the Indiana anti-gambling laws for years and the statute involved herein requires such knowledge and intent;

2. In *Lambert,* the accused was completely and innocently passive "unlike the commission of acts or the failure to act under circumstances that should alert the doer to the consequences of his deed."

In the case at bar, defendants were actively engaged in an unlawful gambling enterprise involving the use of wire facilities. For these reasons, *Lambert* supports the conclusion we have reached.

The Supreme Court has also held that Congressional silence with reference to intent may not dispense with the requirement if the statute contains well defined traditional common law terms such as larceny or embezzlement. The Court stated as follows:

"Congress, therefore, omitted any express prescription of criminal intent from the enactment before us in the light of an unbroken course of judicial decision in all constituent states of the Union holding intent inherent in this class of offense, even when not expressed in the statute. Congressional silence as to mental elements in the Act merely adopting into federal statutory law a concept of crime already so well defined in common law and statutory interpretation by the states may warrant quite contrary inferences than the same silence in creating an offense new to general Law, for whose definition the courts have no guidance except the Act. * * *

* * * And where Congress borrows terms of art in which are accumulated the legal tradition and meaning of centuries of practice, it presumably knows and adopts the cluster of ideas that were attached to each borrowed word * * *." Morrissette v. United States, 342 U.S. 246, 72 S.Ct. 240, 249, 250, 96 L.Ed. 288, 289, 299, 300 (1952)

The statute involved in the present case is not silent as to intent, since it requires an intent to promote or facilitate the promotion of gambling activities in violation of local law. The statute is silent, however, with reference to an intent to violate the federal law by the use of an interstate facility, since the statute states only that "Whoever * * * uses any facility * * * with intent to * * *. shall be fined * * *". Defendants argue that the statute should be construed as if it read "whoever knowingly uses" or "whoever intentionally uses" thus requiring knowledge that the facility was in interstate commerce and an intent to violate the federal statute. We hold that the Congressional failure to expressly require knowledge of the interstate character of the facility or an intent to violate the

federal statute means that the offense does not involve these elements. This conclusion is not in conflict with the *Morrissette* doctrine because the use of a facility in interstate commerce has no traditional common law elements of specific intent or knowledge. Furthermore, *Morrissette* involved total Congressional silence with reference to intent whereas Section 1952 expressly provides that an intent to promote or facilitate unlawful gambling activities is an element of the offense. If a different or additional intent was contemplated, Congress would have so provided.

The above conclusion is further supported by virtue of the passage of a related statute[3] (Title 18 U.S.C. § 1084) on the same date concerning the transmission of wagering information. Although Sections 1084 and 1952 have similar purposes, namely to reach organized, syndicated unlawful gambling activities,[4] each involves a different offense with different elements of proof and different penalties. United States v. Smith, supra, United States v. Borgese, supra. In Section 1084, Congress expressly provided as follows: "Whoever being engaged in the business of betting or wagering *knowingly* uses a wire communication facility * * *". This language differs significantly from that of Section 1952 which is phrased, "[w]hoever * * * uses any facility * * * with intent * * *". Even if no plausible reason for the differing language on this issue existed, this

Court would be hesitant to assume that the word "knowingly" was omitted from Section 1952 as a result of an oversight. However, we feel that the difference in the language employed was intentional and is based upon significant differences in the conduct prohibited by each statute. Under Section 1084, an element of the offense is the engaging in the business of betting or wagering, but this business need not be unlawful in the state where it is carried on. Rather, the transmission of wagering information on a sporting event either from or to a state where betting on that event is illegal is prohibited. Accordingly, even though a gambling enterprise may be legal in the state of transmission, one who is engaged in such an enterprise and who transmits wagering information concerning a sporting event into a state which prohibits wagering on that sporting event violates Section 1084. Since the local gambling activity need not be illegal for a violation of Section 1084, Congress has expressly provided that the use of a wire facility for the transmission in interstate or foreign commerce be done "knowingly". On the other hand, Section 1952 involves the use of a facility in interstate commerce with intent to promote an unlawful gambling activity. Since Section 1952 requires the specific intent to promote an unlawful gambling activity, no danger exists that innocently ignorant or passive conduct will be punished as conceivably could occur under Section 1084 had the word "knowingly" been omitted.

3. Title 18 U.S.C. § 1084 provides in relevant part as follows:
"Transmission of wagering information; penalties
(a) Whoever being engaged in the business of betting or wagering knowingly uses a wire communication facility for the transmission in interstate or foreign commerce of bets or wagers or information assisting in the placing of bets or wagers on any sporting event or contest, or for the transmission of a wire communication which entitles the recipient to receive money or credit as a result of bets or wagers, or for information assisting in the placing of bets or wagers, shall be fined not more

than $10,000 or imprisoned not more than two years, or both.
(b) Nothing in this section shall be construed to prevent the transmission in interstate or foreign commerce of information for use in news reporting of sporting events or contests, or for the transmission of information assisting in the placing of bets or wagers on a sporting event or contest from a State where betting on that sporting event or contest is legal into a State in which such betting is legal."

4. See 1961 U.S. Code Congressional and Administrative News, pages 2631 and 2664.

We conclude, therefore, that Congress has been alert and explicit as to the mental elements required under both Section 1084 and Section 1952. Morrissette v. United States, supra, 342 U.S. 246, 72 S.Ct. 240, 96 L.Ed. 288, 301.

Perhaps the most illuminating precedents with reference to the problem at bar concerning the mental element under Section 1952 in the use of an interstate facility are those cases involving the transportation and receipt of stolen property moving in interstate commerce. Courts have held that the Dyer Act (Title 18 U.S.C. § 2311 et seq.) is violated when one receives a stolen automobile with knowledge of its theft even if he is unaware that it has been transported in interstate commerce. Pilgrim v. United States, 266 F.2d 486 (5th Cir. 1959) Brubaker v. United States, 183 F.2d 894 (6th Cir. 1950). Likewise, it is not necessary for the government to show that the accused knew goods were to be transported in interstate commerce to sustain a conviction for transportation in interstate commerce of goods knowing them to have been stolen. United States v. Kierschke, 315 F.2d 315 (6th Cir. 1963); United States v. Tanuzzo, 174 F.2d 177, (2nd Cir. 1949) cert. den. 338 U.S. 815, 70 S.Ct. 38, 94 L.Ed. 493. The statutory provisions in the above cases are analagous to the provisions of Section 1952. Very pertinent to the issue under consideration in the case at bar are the following excerpts from two cases from the Sixth Circuit Court of Appeals:

"It is insisted by respondents that in order to justify their conviction it must appear, not only that they knew the automobile had been stolen, but that they knew of the interstate transportation. The trial court took the other view, and charged that knowledge that the automobile had been stolen was enough. In this the court was right. As far as this point is concerned the case cannot be distinguished from our decision in Kasle v. United States, 233 Fed. 878 [6 Cir.]. *The statute does not require that persons otherwise guilty thereunder should escape because they supposed that they were violating only a state and not a federal law.*" Emphasis added Katz v. United States, 281 F. 129 (6th Cir. 1922)

The Court in *Kasle,* stated as follows:

"As we interpret the statute such an allegation is not necessary. One who knowingly receives stolen chattels must do so at the peril of their having been stolen while in course of interstate transportation; indeed it is not perceived why the thief should escape conviction under this statute just because he did not know the points of origin and destination. Manifestly both the receiver and the thief are chargeable with knowledge of the act of Congress forbidding this particular theft, quite as certainly as they are of a state statute prohibiting theft generally. The status of the articles, in the sense of being interstate or intrastate in character, cannot in the nature of things affect the fact either of the stealing or receiving alleged; and the statute, whether federal or state, is at bottom aimed against stealing or receiving. The most then that can be said of the object of allegation, as well as proof, touching the interstate character of the articles is to show the existence of the condition which brought the subject within the federal power and jurisdiction."

The views expressed in these cases were followed in Donaldson v. United States, 82 F.2d 680 (7th Cir. 1939) and Loftus v. United States, 46 F.2d 841 (7th Cir. 1931). We hold that the use of a facility in interstate commerce is a necessary jurisdictional element of an offense under Title 18 U.S.C. § 1952 but that no specific mental element or specific intent beyond the ordinary general criminal intent need be shown with reference to such use.

■ Defendants also argue that the verdicts are unsupported by substantial evidence and are contrary to the manifest weight of the evidence. This contention is without merit since ample evi-

dence was before the jury concerning defendants' carrying on of an unlawful gambling enterprise and the use of the wire ticker tape facility which defendants had installed to promote and facilitate the carrying on of gambling activity they knew to be unlawful by the posting of scores from the machine to a blackboard on the premises. Accordingly, the findings of guilty are sustained by the evidence. Title 18 U.S.C. §§ 1952 and 2. The Court has also considered the other points raised by the defendants and finds them to be equally without merit.