**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Paul Joseph McMENAMA, also known as
Doc Gibson, Defendant-Appellant.**

**No. 18448.**

United States Court of Appeals
Sixth Circuit.

Nov. 27, 1968.

Julius Rather, Lexington, Ky., for appellant, John W. Core, Lexington, Ky., on brief.

Philip Huddleston, Louisville, Ky., for appellee, Ernest W. Rivers, U. S. Atty., Louisville, Ky., on brief.

Before O'SULLIVAN, PECK and McCREE, Circuit Judges.

JOHN W. PECK, Circuit Judge.

Defendant-appellant was convicted and sentenced pursuant to a jury verdict finding him guilty of both counts of a two-count indictment charging violations of 18 U.S.C. § 1952. That section is captioned "Interstate and Foreign Travel or Transportation in Aid of Racketeering Enterprises," and provides that one is guilty of a crime who travels or uses any facility in interstate commerce with intent to "distribute the proceeds of any unlawful activity," to "further any unlawful activity," or to "otherwise promote, manage, establish, carry on * * * any unlawful activity." Subsection 1952 (b) defines "unlawful activity" for purposes of the statute as meaning (among other things) "any business enterprise involving gambling * * * in violation of the laws of the State in which they are committed * * *." The indictment in the present case alleges violations of Kentucky Revised Statutes 436.210 and 436.490.

The testimony received at both trials (the first terminated in a hung jury, the second in the conviction from which the present appeal was perfected) established that chief government witness Baines, a Louisville, Kentucky, tavern owner, received a telephone call in that city from a "Doc Gibson" who was theretofore unknown to Baines; that Doc Gibson identified himself as a track veterinarian who could accurately predict racetrack

winners, and who proposed to supply such winners to Baines if the latter would make bets through bookmakers and split the winnings after taking his expenses "off the top."

Baines testified that after Doc Gibson had in long-distance telephone calls supplied the names of seven straight winners he accepted the proposal and began making bets under it; that on a specified date he so placed a $200 wager on a horse named Larkster who won and paid $9.80 on a $2.00 ticket, and that he thereafter remitted $350 by Western Union telegram to "P. J. McMenama, Little Rock, Arkansas," Gibson having given instructions that remittance be made to that name and address. Details of the winning of a race by Larkster on the date named at the price stated and of the remittance were corroborated by other witnesses. Baines further testified that after losing some $4,500 on other horses recommended by Doc Gibson by long-distance telephone he arranged to and did meet Gibson in a Louisville hotel lobby. Baines testified that all of the calls received from Doc Gibson were from the same man with a "distinctive" voice, and that the man with whom he conferred in the hotel lobby was also the same man. He identified the defendant in the courtroom as being that man.

■ In his testimony defendant-appellant denied that he had ever called Baines on the telephone or that he had ever met him, and denied ever having used the alias "Doc Gibson." He acknowledged receiving, endorsing, and cashing the money order from Baines, contending that he did it as a favor for Doc Gibson, whom he had known for about thirty years, but who could not receive a Western Union money order in his own name because he had no driver's license for identification purposes. He further testified that Doc Gibson had subsequently died somewhere in California. While the issue is not squarely presented on this appeal,* there can be no question but that

sufficient evidence existed to present to the jury the question of whether defendant-appellant had identified himself by telephone and in the hotel lobby meeting as "Doc Gibson."

Appellant in his brief states the first question on this appeal to be whether the government had proved "that McMenama had violated K.R.S. 436.210 or K.R.S. 436.490," but of course that question was not presented in the court below nor is it an issue here, and it is not responsive to any contention of the government. The first count of the indictment charges that he used "facilities in interstate commerce, that is, telephone and telegraphic services between Hot Springs, Arkansas, and Louisville, Kentucky, with the intent to promote" gambling in violation of Kentucky law; the second count of the indictment charges that he used telegraphic interstate commerce facilities between the same cities "with the intent to distribute the proceeds of gambling activities unlawful under Kentucky law." His personal violation of the designated Kentucky statutes is not alleged, and his presence in that state is neither alleged nor essential to the commission of the offense charged.

The first of the two specified Kentucky statutes (K.R.S. 436.210) is an ancient one which appears to have been construed in only one hoary case (Commonwealth v. Hopkins, 32 Ky. 418 (1834)). Appellee argues without spirit that appellant fits that statute's definition of a "common gambler," but we pass the question of its application as immaterial to the conclusion hereinafter reached. See Myrick v. United States, 332 F.2d 279, 281 (5th Cir. 1963); Turf Center, Inc. v. United States, 325 F.2d 793, 796 (9th Cir. 1963).

■ K.R.S. 436.490 establishes as a crime the placing of any wager on horse races "except [those] made within the enclosure of a race track licensed by the State Racing Commission during an authorized race meeting at that track," or

---

* Appellant made no motion at any time for a judgment of acquittal on this basis. See United States v. Gosser, 339 F.2d 102, 110 (6th Cir. 1964), cert. denied, 382 U.S. 819, 86 S.Ct. 44, 15 L.Ed.2d 66 (1965) and the cases cited therein.

at other specified "enclosures." The proscribed offense is commonly conducted with a bookmaker and is referred to as "off-track" betting. There was evidence tending to show that appellant used a facility in interstate commerce, namely the telephone, to promote and carry on the unlawful activity of off-track betting (by inducing Baines by telephone to make such bets), and that he used another facility of interstate commerce, namely, the telegraph, to distribute the proceeds of that unlawful activity (by inducing Baines to so make remittance). 18 U.S. C. § 2. The evidence of the record is further sufficient to support the conclusion necessary to the jury verdict that the requisite intent was present. See United States v. Miller, 379 F.2d 483, 486 (7th Cir.), cert. denied, 389 U.S. 930, 88 S.Ct. 291, 19 L.Ed.2d 281 (1967).

Appellant contends in this court for the first time that he was prejudiced by the caption of the indictment which reads, "United States of America v. Paul Joseph McMenama, also known as Doc Gibson." As hereinabove indicated, this case was tried not once but twice in the District Court. Although what he might have anticipated the essence of the government's case to be at the first trial may be open to conjecture, clearly by the time the case was retried some four months later the appellant had intimate knowledge of the details of the government's contentions. In spite of this he at no time either prior to the first trial, subsequent to the second trial, or in the interim between them complained of prejudice on this account. In these circumstances it is held that the issue has not been preserved for appellate review. Eisner v. United States, 351 F.2d 55, 58 (6th Cir. 1965); McDowell v. United States, 336 F.2d 435, 439 (6th Cir. 1964), cert. denied, 379 U.S. 980, 85 S.Ct. 685, 13 L. Ed.2d 571 (1965).

The judgment of conviction is affirmed.