**UNITED STATES of America, Plaintiff-Appellee,**

v.

**Benny Carlton JUDKINS, Defendant-Appellant.**

**No. 19887.**

United States Court of Appeals, Sixth Circuit.

Decided and Filed July 13, 1970.

Joe P. Binkley, Jr., Nashville, Tenn. (Joe P. Binkley, Nashville, Tenn., on the brief), for appellant.

Ira E. Parker, III, Nashville, Tenn. (Charles H. Anderson, U. S. Atty., Nashville, Tenn., on the brief), for appellee.

Before WEICK, CELEBREZZE and BROOKS, Circuit Judges.

WEICK, Circuit Judge.

This appeal is from a judgment of conviction by the District Judge, sitting without a jury, on a charge of using the facilities of interstate commerce with intent to promote, manage, facilitate or carry on an unlawful activity, in violation of 18 U.S.C. § 1952 [1]. Judkins ad-

---

1. 18 U.S.C. § 1952 provides:

"(a) Whoever travels in interstate or foreign commerce or uses any facility in interstate or foreign commerce, including the mail, with intent to—

(1) distribute the proceeds of any unlawful activity; or

(2) commit any crime of violence to further any unlawful activity; or

(3) otherwise promote, manage, establish, carry on, or facilitate the promotion, management, establishment, or carrying on, of any unlawful activity, and thereafter performs or attempts to

mittedly was engaged in the business of operating a house of prostitution in Nashville, which was in violation of the laws of Tennessee. Tenn.Code Ann. § 39–3502.

The conviction was based entirely on telephone calls made by Judkins from Hot Springs, Arkansas, where he was sojourning for his health, to persons in his house of prostitution in Nashville, on the 26th, 27th and 28th days of February, and on the 2nd of March, 1969.

Judkins, a married man, had been previously carrying on affairs with two prostitutes, Lisa and Bridgett, who worked in his house of prostitution. He later divorced his wife, who was also a prostitute, and he then married Bridgett. Judkins admitted that he telephoned his house of prostitution from Hot Springs, Arkansas, on the dates in question, and in his conversations with Bridgett told her that he loved her. The so-called Madam, who was his telephone operator, answered the telephone on each occasion. The Madam testified for the Government that Judkins, on the occasions of the telephone calls, would ask how everything was, and if Lisa was there. The Madam would respond that everything was fine or that everything was "O.K or things were slow;" then Judkins would speak to Lisa. The Madam testified, in response to questions by the Court, that she did not tell him how many girls had gone out on dates, or how much money was collected the night before, or "anything of this sort."

Judkins' then wife, who was with him in Hot Springs, Arkansas, testified for the prosecution that she overheard a telephone conversation which her husband had with Lisa. He asked Lisa "how things were." She testified further that Judkins told Lisa, "I spent seven dollars talking with you last night when I called you and we'll go ahead and make it up."

Lisa testified that Judkins asked her how she was doing and she said, "Fine". Although he never brought up the subject, she told him that she was working. She also testified that she was in love with Judkins.

Judkins took the stand and testified in his own behalf. He admitted making the telephone calls to his house of prostitution on the days in question. He testified, however, that the calls were made to Bridgett, who was his mistress, and not to Lisa. When asked for what purpose he called, Judkins testified that he called to "tell her I loved her and just that is about it." He denied saying anything to the Madam except to ask for Bridgett.

Bridgett testified for the defense that Judkins called her on several occasions from Hot Springs and told her that he loved her and talked about personal things. There was not any discussion concerning the business.

When Judkins' wife, whom he later divorced, returned to Nashville from Hot Springs, she contacted a Special Agent of the FBI and gave him information concerning Judkins. She was one of the sources which led to the present prosecution. In an effort to persuade Judkins to discontinue his affairs with Bridgett, his wife had threatened to contact the FBI.

█  This was the substance of the testimony before the District Court. The issue presented in this appeal is whether the evidence was sufficient to support the conviction of Judkins on the

perform any of the acts specified in subparagraphs (1), (2), and (3), shall be fined not more than $10,000 or imprisoned for not more than five years, or both.

"(b) As used in this section 'unlawful activity' means (1) any business enterprise involving gambling, liquor on which the Federal excise tax has not been paid, narcotics, or prostitution offenses in violation of the laws of the State in which they are committed or of the United States, or (2) extortion, bribery, or arson in violation of the laws of the State in which committed or of the United States.

"(c) Investigations of violations under this section involving liquor or narcotics shall be conducted under the supervision of the Secretary of the Treasury."

charge of using interstate facilities with intent to promote, manage, facilitate, or carry on the business of prostitution. We are of the opinion that there was not sufficient evidence.

In determining this question we are required to view the evidence as well as inferences properly deducible therefrom in the light most favorable to the Government. Glasser v. United States, 315 U.S. 60, 80, 62 S.Ct. 457, 86 L.Ed. 680 (1942); United States v. DeNiro, 392 F.2d 753, 756 (6th Cir. 1968).

The word "facilitate", as used in the statute, means "to make easy or less difficult." United States v. Miller, 379 F.2d 483, 486 (7th Cir. 1967); United States v. Barrow, 212 F.Supp. 837, 840 (E.D.Pa., 1962).

The Government contends that the cooperation of Judkins' prostitutes was made possible by the affairs which he personally was carrying on with them, and by their affection for him, and that he called them on the telephone to keep them happy and thereby facilitated the operation of his business. We think this contention is too tenuous. It was not an offense for Judkins to make personal telephone calls to the prostitutes to talk to them on matters not connected with the operation of his business.

The operation of the house of prostitution did constitute a violation of Tennessee law, but Judkins was not prosecuted for that violation; nor was he prosecuted for carrying on affairs with his girl friends who were prostitutes.

In our judgment, his conversation with the Madam when he asked "how everything was" could reasonably be considered as a greeting or salutation. Her answer was, "I'd say everything was fine." Judkins never asked the Madam or the prostitutes over the telephone how much money they had made, and he gave them no advice, directions or instructions as to the operation of the business. He did not even make any mention of the business either to the Madam or to the prostitutes. Nor is there any proof that they did anything with respect to the operation of the business as a result of their telephone conversations with Judkins.

The statements made by Judkins to the prostitutes, one of whom was his mistress (she later became his wife), can reasonably be construed to express his personal feelings for them. Although the telephone conversations may also have had the effect of keeping them happy (which is no offense), it is equally as probable that the calls were made entirely for personal reasons which had no connection with the operation of the business. *Cf.* United States v. Hawthorne, 356 F.2d 740 (4th Cir. 1966).

In our opinion, the evidence of the telephone conversations was too weak to establish beyond a reasonable doubt the use of interstate facilities with intent to promote, manage, facilitate, or carry on the prostitution business. An adequate remedy exists in the state court for violation of the laws of the state relating to prostitution.

The judgment of conviction is reversed, and the case is remanded for entry of a judgment of acquittal.