UNITED STATES of America,
Plaintiff-Appellee,

v.

Charles STAGMAN et al., Defendants-
Appellants,

v.

Elmer Lawrence WIETHORN et al.,
Defendants-Appellants.

Nos. 20621, 20636.

United States Court of Appeals,
Sixth Circuit.

July 27, 1971.

James L. Cobb, Jr., Covington, Ky., for Charles Stagman and others.

Morris Weintraub, Newport, Ky., for Elmer Lawrence Wiethorn and others; James L. Cobb, Jr., and Peter F. Beasley, Covington, Ky., on brief.

Maurice K. Merten, Atty., Dept. of Justice, Crim. Div., San Francisco, Cal., for plaintiff-appellee; Eugene E. Siler, Jr., U. S. Atty., Lexington, Ky., Robert Gary, Atty., Dept. of Justice, Washington, D. C., on brief.

Before EDWARDS and McCREE, Circuit Judges, and O'SULLIVAN, Senior Circuit Judge.

McCREE, Circuit Judge.

We consider two appeals by several defendants from convictions in the Unit-

ed States District Court for the Eastern District of Kentucky for violating the Travel Act, 18 U.S.C. § 1952.[1] We have consolidated these cases for purposes of this opinion because, although the facts differ in some respects, the decisive issues of law are the same.

The Travel Act subjects to criminal penalties:

> (a) Whoever travels in interstate * * * commerce or uses any facility in interstate * * * commerce, including the mail with intent to— * * *
>
> (3) * * * promote, manage, establish, carry on, or facilitate the promotion, management, establishment or carrying on, of any unlawful activity * * *.

18 U.S.C. § 1952(a) (3). "Unlawful activity" is defined more narrowly than in ordinary usage. It includes, *inter alia,* "any business enterprise involving gambling * * * offenses in violation of the laws of the State in which they are committed * * *." 18 U.S.C. § 1952 (b) (1).

The case against Charles Stagman may be taken as representative of those involving the other defendants. Stagman, a resident of Cincinnati, Ohio, was involved in the operation and management of the Flamingo Club in Newport, Kentucky, a city of 30,000 which lies just south of Cincinnati across the Ohio River. Stagman took the witness stand at trial and admitted that with others he operated a bingo game at the Flamingo. It is not disputed that he used facilities of interstate commerce in this enterprise: he commuted across the Ohio-Kentucky boundary every working day, and the bingo equipment was purchased from a company in Englewood, Colorado (assertedly the only licit manufacturer of such material in the United States). There was no contention, as in United States v. Judkins, 428 F.2d 333 (6th Cir. 1970), that appellants did not intend to use interstate instrumentalities in furtherance of what the Government claims was an illegal enterprise.

■ Stagman's only defense is that he believed in good faith, and had reasonable grounds for doing so, that the Flamingo bingo game was legal under Kentucky law. The District Court permitted him and other defendants to present evidence in support of this claim. Stagman testified that the Sheriff, Deputy Sheriff, and an assistant Commonwealth's Attorney of Campbell County (where Newport is located) advised him that bingo games were legal, if certain rules were observed.[2] Stagman testified that he and others associated with the Flamingo operation complied with these rules. The Sheriff and Deputy Sheriff also testified at trial, and their testimony corroborated Stagman's.

The District Court declined to deliver appellant's requested jury instructions that attempted good faith compliance with state law is a defense to a Travel Act prosecution.[3] Appellant's requested

---

1. In Case No. 20621, Charles Stagman was convicted of violating 18 U.S.C. § 1952 and 18 U.S.C. § 371 (conspiracy to violate § 1952), and four other defendants, Vincent Lasita, Gary Girelach, Anthony John Good, and George Girelach, were convicted of violating 18 U.S.C. § 371. Four were sentenced to a year and a day's imprisonment, and George Girelach was placed on probation. In case No. 20636, the four defendants, Elmer Lawrence Wiethorn, Jack Clarence Secrist, Charles Henry Mile, and Grover Key, were convicted on both substantive and conspiracy counts, and all four received sentences of a year and a day.

2. The rules were: (1) there could be no fixed charge for playing; (2) a charitable organization must sponsor the game; (3) a financial report must be filed with the Campbell County Sheriff's Office at regular intervals. Presumably these rules were based on the theory that Kentucky allowed charitable bingo, a theory not wholly implausible in light of the language in A. B. Long Music Co. v. Commonwealth, 429 S.W.2d 391, 394 (Ky.1968).

3. This opinion concerns only those offenses under the Travel Act which involve interstate transportation, etc., to facilitate violaion of *state* laws. We express no opin-

charge would have required a finding of "specific intent," *i. e.*, that defendants acted "intending with bad purpose either to disobey or to disregard the law," as a prerequisite to a guilty verdict. *See* W. Mathes & E. Devitt, Federal Jury Practice and Instructions § 10.03, at 124 (1965); *cf.* 1 E. Devitt & C. Blackmar, Federal Jury Practice and Instructions § 13.03, at 273–74 (1970). The District Court instead instructed the jury that the operation of a bingo game was illegal under the laws of Kentucky, and that the only intent required by the federal statute was the intent to do, as the Government states, "that which is unlawful." [4] Recourse to legislative history, however, fails to reveal whether Congress, by its use of the language "with intent to * * * carry on * * * any unlawful activity" meant to include *mens rea* as an element of the crime. *See* United States v. Lester, 363 F.2d 68, 73 (6th Cir. 1966).

In a recent case in which this precise issue was not presented, another panel of this court stated:

> To successfully prosecute one under the above statutory provision [§ 1952], the United States must prove the following elements: (1) that the accused voluntarily traveled in interstate commerce or used the facilities of interstate commerce; (2) that he attempted to or did in fact promote, manage, establish, carry on or facilitate the promotion, management, establishment or carrying on of any one of certain statutorily defined activities; and (3) *that the accused formed a specific intent* to promote, manage, establish, carry on or facilitate one of the pro-

hibited activities. (Emphasis supplied.)

United States v. Gebhart, 441 F.2d 1261, 1263 (6th Cir. 1971). The court went on to explain what was required to establish a defense of lack of specific intent:

> In order to assert a defense of a mistake of law based upon a good faith reliance on the representations of public officials, the Appellants must demonstrate that they received communications from public officials in a situation in which reliance would have been justified.

*Id.* at 1265. This requirement of *mens rea* is consistent with that of the majority of the Courts of Appeals which have directly addressed this question. These courts have stated that knowing and wilful intent to violate state laws is an element of the crime proscribed by the Travel Act. United States v. Miller, 379 F.2d 483, 486 (7th Cir. 1967), aff'g United States v. Bash, 258 F.Supp. 807, 812 (N.D.Ind.1966); Turf Center, Inc. v. United States, 325 F.2d 793, 797 (9th Cir. 1963); *see also* United States v. Hanon, 428 F.2d 101, 108 (8th Cir. 1970) (en banc) (citing *Bash* and *Miller* with approval, evidence supports finding of violation of Missouri gambling law, one element of which is specific intent); United States v. Chase, 372 F.2d 453, 462 (4th Cir. 1967) (dismissing defendant's argument that lack of knowledge of state offense was a defense on the ground that evidence before the jury supported the conclusion that appellant knew he had violated state law and intended to do so, and not on the grounds that such a defense was insufficient as a matter of

---

ion on the standards under the Travel Act for violations which involve the commission of *federally* created crimes.

4. Obviously, this instruction rendered most of the testimony presented by appellants irrelevant to the jury's deliberations. Since appellant admitted crossing interstate lines, admitted buying bingo equipment made in Colorado, and admitted operating bingo games, appellants argue that the charge was in effect a directed

verdict of guilty. But if the District Court's theory of law is correct, then the charge was as favorable as any to which appellants were entitled. By allowing appellants to introduce evidence of good faith efforts at compliance with Kentucky law, the District Court in effect postponed determination of the validity of that defense until the time for jury instructions—a not uncommon trial practice when difficult questions of law are involved.

law). *Contra,* United States v. Hawthorne, 356 F.2d 740, 742 (4th Cir. 1966), cert. denied, 384 U.S. 908, 86 S.Ct. 1344, 16 L.Ed.2d 360 (1966), *followed in* United States v. Wechsler, 392 F.2d 344, 347 n. 3 (4th Cir. 1968), cert. denied, 392 U.S. 932, 88 S.Ct. 2283, 20 L.Ed.2d 1389 (1968).[5]

At common law, *mens rea* was an element of all felonies, and although it is clear that a legislature can make certain conduct a crime even in the absence of *men rea*—*see, e. g.,* Sayre, Public Welfare Offenses, 33 Colum.L.Rev. 55 (1933) —we do not ordinarily assume that it has done so without some clear indication. *See* Wharton's Criminal Law and Procedure § 60, at 135–36 (1957). ("Ordinarily, intent is an essential element of the crime." *Id.* at 135.) The Supreme Court has held that "the mere omission * * * of any mention of intent will not be construed as eliminating that element from the crimes denounced," Morissette v. United States, 342 U.S. 246, 263, 72 S.Ct. 240, 250, 96 L.Ed. 288 (1952), in the absence of "any affirmative instruction from Congress to eliminate intent from [the] offense * * *." *Id.* at 273, 72 S.Ct. at 255. Here, in contrast to the statute involved in *Morissette,* Congress has used the word "intent" in the statute. 18 U.S.C. § 1952 proscribes the crossing of state lines or the use of instrumentalities of interstate commerce "with intent to * * * carry on * * * unlawful activity." The Government argues that the word "intent" is meant to apply only to the verb "to carry on" and not to its

object, "unlawful activity"—*i. e.,* that the crime does not require knowledge that the activity is unlawful. We prefer the more natural reading, in which "intent" refers to the entire phrase "to * * * carry on * * * any unlawful activity."

This interpretation makes sense in light of the purposes and structure of the Act. Section 1952 subjects to harsh penalties—a maximum of five years' imprisonment and a $10,000 fine—persons who cross state lines to violate what may be petty gambling laws. *E. g.,* Ky. Rev.Stat. § 436.200, which imposes a fine of not less than $20 and not more than $100 on "[a]ny person who engages in any hazard or game on which money or property is bet, won or lost, in any case in which no other penalty is prescribed, * * *." When Congress has in effect incorporated state laws within a federal criminal statute, and only because of the employment of interstate facilities has increased by many times the penalty which the state imposes for the infraction, we should look very carefully indeed for an indication that it intended that penalty to apply to persons who did not know that they were violating any law. *Cf.* Morissette v. United States, 342 U.S. 246, 256, 72 S.Ct. 240, 96 L.Ed. 288 (1952). We find no such indication in the language or legislative history of the Travel Act.

The District Court's refusal to deliver the proffered instructions on specific intent precluded any consideration of this defense,[6] which, since the trial, has been

---

5. The dissent observes correctly that the Seventh and Ninth Circuit positions were enunciated only in dictum. We observe, however that the Fourth Circuit position is not a clear holding. "We do not think the statute (18 U.S.C. § 1952) requires proof that the defendant knew that he was violating the Indiana law by operating slot machines in the state, although there was evidence from which the jury could have so found." United States v. Hawthorne, 356 F.2d 740, 742 (4th Cir. 1966).

6. The quotations from the charge in the dissenting opinion are taken out of con-

text and do not focus on the issue in dispute here. In the *Stagman* case, for example, immediately after the portion of the instructions quoted in the dissent, the District Court told the jury:

Now, there has appeared in this case from time-to-time suggestion throughout the trial that these defendants did what they did because they were advised by some local law officer or some other source that to operate a bingo game was not a violation of the Kentucky law. That is not true. The operation of a bingo game if it is done for money, where money or property may be won or lost, is a lottery, and is contrary to

approved by this court, aligning itself with the majority of the Courts of Appeals which have spoken directly on the question. Accordingly, we hold that the convictions must be reversed and the cases remanded for new trials in which the defense of good faith attempts at compliance should be submitted to the jury.

■ The general rule in criminal cases is that the prosecution must prove, beyond a reasonable doubt, both act and intent. Of course intent may be inferred from the totality of circumstances surrounding the commission of the prohibited act. And when, as here, a defendant introduces evidence of good faith attempts to comply with the law, a court has a clear obligation to submit the issue of specific intent with explicit instructions to the jury. It is then for the jurors to decide whether this evidence has raised a reasonable doubt of the defendant's guilt. Our system of justice assumes that jurors can make the kinds of judgments required here and can determine whether a defendant's asserted belief in the legality of his conduct is implausible.

We emphasize that we do not hold that Kentucky law has or does not have a specific intent requirement in its statute proscribing gambling. Our holding is concerned solely with whether such a re-

quirement is imposed by the federal statute, where violation of the state law is a prerequisite for conviction of the federal crime. It may be objected that our decision imposes additional burdens on federal prosecutors seeking to extirpate organized crime operating across state lines. Our decision seems to be consistent with the view of the Supreme Court in the recent case of Rewis v. United States, 401 U.S. 808, 91 S.Ct. 1056, 28 L.Ed.2d 493 (1971), in which a unanimous Court (Mr. Justice White not participating) held that the Travel Act did not cover casual gamblers who crossed state lines simply to make a bet. In reaching that conclusion, which of course is not in issue here, the Court said:

Given the ease with which citizens of our Nation are able to travel and the existence of many multi-state metropolitan areas, substantial amounts of criminal activity, traditionally subject to state regulation, are patronized by out-of-state customers. In such a context, Congress would certainly recognize that an expansive Travel Act would alter sensitive federal-state relationships, could overextend limited federal police resources, and might well produce situations in which the geographic origin of customers, a matter of happenstance, would transform relatively minor state offenses into federal felonies.

the Kentucky Constitution and the Kentucky law. So, a person cannot avoid the responsibilities of a criminal law by saying he didn't understand it or he didn't know it or didn't believe it to be against the law.

Later in the course of the instructions, the court stated:

The Court instructs you as a matter of law that the operation of a bingo game if it is done for money, where money or other thing of value may be won or lost, is a lottery within the meaning of the Kentucky statute. And the question for you to decide if you believe that that was done, under the stipulation, that interstate commerce was had with reference to the matters and paraphernalia that was used and you believe that these defendants or any of them had an understanding between themselves as to the carrying on of this

business, and that they did something to carry out that understanding, and you believe that fact to the exclusion of a reasonable doubt, then these defendants or such of them as to whom you entertain no such reasonable doubt are guilty of the conspiracy as set forth in this indictment.

Examination of the records in both cases demonstrates that these statements were not inadvertences. The District Judge, after colloquy with counsel, obviously gave careful consideration to this difficult question of law, and made a decision. The District Court expressly refused to deliver the defense's tendered instructions which would have required the jury to find a criminal intent before convicting. The instructions delivered seem clearly not to require the jury to find this element of the offenses.

*Id.* at 812, 91 S.Ct. at 1059. These considerations which are consequences of our federal system are also relevant to the question whether the "intent" mentioned in the statute requires a finding of specific intent to violate state law.

Such a requirement would make sense in light of the nature of the crime proscribed by the statute. The act of traveling interstate or of using the facilities of interstate commerce is inherently lawful, and Congress cannot have intended to make it a crime, without more. *Cf.* Edwards v. California, 314 U.S. 160, 62 S.Ct. 164, 86 L.Ed. 119 (1941). To eliminate the element of *mens rea* would make interstate travel or the utilization of facilities of interstate commerce a hazardous undertaking. The requirement that the jury must find that the defendant intended with bad purpose to violate the law of the state of destination would eliminate this danger, and would not, as suggested in the dissent, present an insuperable burden for the prosecution. Juries are regularly required to find a *mens rea* element in prosecutions under other statutes involving interstate activity such as the Dyer Act, 18 U.S.C. § 2312, and the Mann Act, 18 U.S.C. §§ 2421 et seq., and there appears no reason why they would have any special difficulty under our construction of this legislation.

■■ Appellants also argue that we should overturn their convictions without giving the Government an opportunity for retrial, because the prosecutions were invidiously and arbitrarily discriminatory, in violation of the standards set in Yick Wo v. Hopkins, 118 U.S. 356, 6 S.Ct. 1064, 30 L.Ed. 220 (1886), and Bolling v. Sharpe, 347 U.S. 497, 74 S.Ct. 693, 98 L.Ed. 884 (1954). We think that this claim is without merit. There is no showing that the decision to prosecute was based "upon an unjustifiable standard," Oyler v. Boles, 368 U.S. 448, 456, 82 S.Ct. 501, 7 L.Ed.2d 446 (1962), nor that appellants were alone singled out for prosecution. *See* United States v. Geb-

hart, *supra*, which is concerned with prosecutions for similar offenses committed in approximately the same time and area. The Government must start somewhere. It need not prosecute every violator in order to prevent all its prosecutions from being labelled arbitrarily discriminatory.

The judgment of the District Court is reversed, and the cases are remanded for a new trial.

O'SULLIVAN, Senior Circuit Judge (concurring).

I concur, but think that I should express my view of the limitations of our holding in United States v. Gebhart, 441 F.2d 1261 (1971). In *Gebhart* we did not reach the question of whether a good faith belief that the activity carried on was legal under state law would be a defense, if such belief was the product of official advice to that effect. We said:

"In order to assert a defense of mistake of law based upon a good faith reliance on the representations of public officials, the Appellants must demonstrate that they received communications from public officials in a situation in which reliance would have been justified."

There was no evidence that the appellants there had received official advice that bingo, as carried on by Gebhart and others, was legal in Kentucky.

EDWARDS, Circuit Judge, (dissenting).

These are cases where hard facts are likely to make bad law. Defendants appeal, after having been tried for conspiring[1] to violate the Travel Act, 18 U.S.C. § 1952 (Supp. V 1969). A number of appellants were also indicted on counts alleging specific violations of the Travel Act. They were all found guilty by juries in the United States District Court for the Eastern District of Kentucky and each appellant has been sentenced to a year and a day in the federal penitentiary. Defendant George Girelach's sen-

1. 18 U.S.C. § 371 (1964).

tence was suspended in favor of probation.

What defendants-appellants actually did was not in dispute in the trial court, nor is it in dispute before us. They admittedly participated in running bingo games in Kentucky. And they admitted that there was daily travel across state lines and the bringing or sending of materials across state lines for the operation of the bingo games. There is no question but that appellants intended to do exactly what they did.

Further, at this point appellants do not appear even to contend that the running of the bingo games at the times and places referred to in these indictments was not a violation of the law of Kentucky. Ky.Rev.Stat. §§ 436.200; 436.360; 436.-370 (1962); Ky.Const. § 226 (1962). Nor do they contend that these state provisions require scienter as a matter of state law.

The facts and legal conclusions outlined above seemed to the District Judge to make out a complete case for jury consideration on the government's charge of violation of the specific terms of the Travel Act:

18 U.S.C. § 1952. "Interstate and foreign travel or transportation in aid of racketeering enterprises.

"(a) Whoever travels in interstate or foreign commerce or uses any facility in interstate or foreign commerce, including the mail, with intent to—

(1) distribute the proceeds of any unlawful activity; or

(2) commit any crime of violence to further any unlawful activity; or

(3) otherwise promote, manage, establish, carry on, or facilitate the promotion, management, establishment, or carrying on, of any unlawful activity,

and therefore performs or attempts to perform any of the acts specified in subparagraphs (1), (2), and (3), shall be fined not more than $10,000 or imprisoned for not more than five years, or both.

"(b) As used in this section 'unlawful activity' means (1) any business enterprise involving gambling, liquor on which the Federal excise tax has not been paid, narcotics, or prostitution offenses in violation of the laws of the State in which they are committed or of the United States, or (2) extortion, bribery, or arson in violation of the laws of the State in which committed or of the United States."

Like my colleagues, I have no doubt that this statute does indeed require the government to prove that defendants' acts were intentional. But for all practical purposes, defendants concede that they intended to run the bingo games. What is at issue here is whether the government also had to prove that defendants knew that bingo was unlawful in Kentucky. I read subparagraph (b) above as an express Congressional rejection of such a burden of proof.

Generally, of course, ignorance of the law is not an excuse. In a very recent case, the United States Supreme Court in dealing with a statute regulating shipment by truck of explosive cargoes has recorded this principle as follows:

"The principle that ignorance of the law is no defense applies whether the law be a statute or a duly promulgated and published regulation. In the context of these 1960 amendments we decline to attribute to Congress the inaccurate view that that Act requires proof of knowledge of the law, as well as the facts, and intended to endorse that interpretation by retaining the word 'knowingly.' We conclude that the meager legislative history of the 1960 amendments makes unwarranted the conclusion that Congress abandoned the general rule and required knowledge of both the facts and the pertinent law before a criminal conviction

could be sustained under this Act." United States v. International Minerals & Chemical Corp., 402 U.S. 558, 91 S.Ct. 1697, 1701, 29 L.Ed.2d 178 (1971).

This was the common law rule and at times it has proved to be a harsh rule, which under some circumstances the courts have acted to alleviate. Morissette v. United States, 342 U.S. 246, 72 S.Ct. 240, 96 L.Ed. 288 (1952).

The majority opinion, however, seems to me to have the effect of amending the Travel Act by adding to 18 U.S.C. § 1952(b) the words "which the person charged knew to be in violation of the laws of the state." I cannot agree that such an amendment is appropriate or desirable because to me it seems to overrule an opposite intention on the part of Congress and to place upon the prosecution the impossible burden of proving the state of mind of the defendant in every Travel Act case.

Nor does it seem to me that such authority as there is on this topic lends support to the majority opinion, United States v. Hawthorne, 356 F.2d 740 (4th Cir.), cert. denied, 384 U.S. 908, 86 S.Ct. 1344, 16 L.Ed.2d 360 (1966); United States v. Wechsler, 392 F.2d 344 (4th Cir.), cert. denied, 392 U.S. 932, 88 S.Ct. 2283, 20 L.Ed.2d 1389 (1968). *See also* United States v. McMenama, 403 F.2d 969 (6th Cir.), cert. denied, 394 U.S. 974, 89 S.Ct. 1465, 22 L.Ed.2d 753 (1968); United States v. Decker, 292 F.2d 89 (6th Cir.), cert. denied, 368 U.S. 834, 82 S.Ct. 58, 7 L.Ed.2d 36 (1961).

In the *Hawthorne* case the Fourth Circuit said:

"We think the defendant was properly convicted under the second count. We do not think the statute (18 U.S.C.A. § 1952) requires proof that the defendant knew that he was violating the Indiana law by operating slot machines in the state, although there was evidence from which the jury could have so found. Such

knowledge was not required to convict under the Indiana statute. Worl v. State, 243 Ind. 116, 183 N.E. 2d 594 (1962), and we think it sufficient under section 1952 that the defendant knowingly caused to be transmitted interstate by the Western Union money order proceeds of a gambling enterprise which was unlawful under the Indiana statute." United States v. Hawthorne, *supra*, 356 F.2d at 742.

I do not read the cases relied on by the majority opinion as authority for requiring that the prosecution prove that appellants in these cases knew the Kentucky law. The issue dealt with in United States v. Miller, 379 F.2d 483 (7th Cir.), cert. denied, 389 U.S. 930, 88 S.Ct. 291, 19 L.Ed.2d 281 (1967), and in United States v. Hanon, 428 F.2d 101 (8th Cir. 1970), was the claim that the government had to prove that the appellants in those cases knew that they were employing interstate facilities in violation of the Travel Act. Both the Seventh and Eighth Circuits rejected the requirement of scienter as to the federal law aspect. In neither case was any issue presented as to scienter concerning state law. United States v. Bash, 258 F.Supp. 807 (N.D.Ind.1966), was the District Court case which the *Miller* case affirmed. The language dealing with knowledge of state law in *Bash* is clearly dictum, as is the quotation from the trial court charge in Turf Center, Inc. v. United States, 325 F.2d 793 (9th Cir. 1964).

The majority opinion also makes reference to United States v. Gebhart, 441 F.2d 1261 (6th Cir. 1971). In this opinion another panel of this court affirmed convictions on a factual background very close to that with which we deal, except that the proofs of reliance upon advice that bingo was lawful in Kentucky at the time were less direct than in the cases before us. *Gebhart* is in my view no precedent for writing scienter into the Travel Act in relation to violation of state law.

Actually, appellants before us offer two arguments. The first in exculpation, and the second in mitigation of their acts. As exculpation, they point to the fact that before they started operating the bingo games concerned, they sought the advice of appropriate local law enforcement officials, including the sheriff and the former sheriff of the county concerned, and were advised that if they operated as they contend they did operate, that the games would not be in violation of Kentucky law. Secondly, in mitigation of their offense, appellants call attention to the fact that since these convictions, the state of Kentucky has amended its antigambling laws so as to allow for the operation of the bingo games which appellants ran at a time when they were in fact illegal. Ky.Rev. Stat. § 238.010 et seq. (1970).

Pending before Congress now is a proposal by the National Commission on Reform of Federal Criminal Laws, which under some circumstances would make mistake of law an affirmative defense:

"§ 609. Mistake of Law.

Except as otherwise expressly provided, a person's good faith belief that conduct does not constitute a crime is an affirmative defense if he acted in reasonable reliance upon a statement of the law contained in:

(a) a statute or other enactment;

(b) a judicial decision, opinion, order or judgment;

(c) an administrative order or grant of permission; or

(d) an official interpretation of the public servant or body charged by law with responsibility for the interpretation, administration or enforcement of the law defining the crime."

Report of the National Commission on Reform of Federal Criminal Laws, § 609

But this proposal would place the burden of proof of "good faith" and "reasonable reliance" upon advice upon the defendant and not upon the prosecution, which has little access to the defendant's subjective state of mind.

If there were a majority of our court inclined toward serious consideration of such an affirmative defense as § 609 above, I would think rehearing of this case and full reargument, including this issue, would be in order.

In the meantime, it seems to me that the District Judge followed the law as Congress wrote it and as the courts to date have interpreted it. Before sending the jury out to deliberate in the *Wiethorn* case, he charged:

"Three essential elements are required to be proved in order to establish the offense charged in each of the first six counts of the Indictment:

"First: The carrying on of a business enterprise involving gambling, by the running of a lottery, in violation of the Kentucky Constitution and Statutes I have read to you;

"Second: Using and causing others to use facilities in interstate commerce with the intent to carry on such a lottery; and

"Third: Doing such act or acts unlawfully, wilfully and knowingly."

And in the *Stagman* case the District Judge charged in part as follows:

"The indictment charges that this act was done, or these acts were done by these defendants knowingly, unlawfully, and intentionally, and you are instructed that an act is done knowingly if done voluntarily and intentionally and not because of mistake or accident or other innocent reason. Unlawful means contrary to law. So to do an act unlawfully means to do wilfully something which is contrary to

the law. An act is done wilfully if done voluntarily and intentionally and with the specific intent to do something the law forbids. That is to say with bad purpose, either to disobey or to disregard the law. An act is done wilfully if done voluntarily and intentionally, and with the specific intent to do something the law forbids. That is to say, with a bad purpose either to disobey or disregard the law. I will repeat that since it is essentially important in this case."

In the absence of a majority in favor of adopting § 609 of the Report of the National Commission on Reform of Federal Criminal Laws, as set forth above, I would affirm the judgment of the District Court, since I find no reversible error under present law in the Judge's charges taken as a whole.

There is, however, still something to be said about this case. The government of the United States in this case clearly employed an elephant gun to shoot a mouse. The Travel Act was, as its legislative history shows, designed to attack interstate organized crime. There is absolutely nothing in the records of the cases before us to show that the bingo games operated by these appellants in anywise fitted that category of activity. Indeed, in a House Report to the companion act of § 1952 (18 U.S.C. § 1953), the House Committee specifically stated that § 1953 prohibitions did not apply to "the game known as bingo."

I agree with the majority that we cannot exempt appellants who appear at least technically to be in violation of the terms of § 1952 of the Travel Act from its sanctions. But surely this is a situation where a technical violation of a federal statute not serving its basic stated purposes should call for application of a penalty proportioned to the offense.

If, as I believe should be the case, the court were to affirm these convictions, consideration could be given to this view in the course of an application for reduction of sentence under Rule 35.